# Smith *v.* Stiles, Probate Judge.

### Mandamus.

(Decided December 16, 1916.   Rehearing denied February 3, 1916.
70 South. 905.)

1. Statutes; Subject; Validity.—Acts 1915, p. 279, does not violate § 45, Constitution 1901, since each provision of the act is germane to the one general purpose of providing a circuit court in each county, and abolishing all others.

[Smith v. Stiles, Probate Judge.]

2. Same—Such statute does not violate § 45, Constitution 1901, by a failure to include the subject of the act in the title, as each provision of the statute was therein referred to.

3. Constitutional Law; Instructions.—It is the duty of the court to uphold the acts of the legislature unless such acts plainly transgress the organic law, and courts will not seize upon garbled expressions or strained definitions for the purpose of striking down an act.

4. Statute; Plurality of Subject.—Since §§ 148 and 171, Constitution 1901, must be construed in pari materia, and when so considered, Acts 1915, p. 279, must be held not invalid because it combines the consolidation and abolition provisions in one act.

5. Same; General Law.—Acts 1915, p. 279, is a general law within the definition of § 110 of the Constitution, and is not made a local law by the fact that some counties had at the time of its enactment, no circuit court and others had only circuit courts, for although its operation is not uniform in that respect, the result is uniform in providing but one court for each county.

6. Same.—Section 147, Constitution 1901, contemplates that counties detached from circuits shall, to all intents and purposes, constitute in themselves judicial circuits, irrespective of the name and character of the courts therein created; hence, the contention that the act in question is rendered local by the fact that Lee and Marengo counties possessed law and equity courts, and hence, are not parts of a judicial circuit, and the act cannot be operative as to them, is not sustained.

7. Courts; Establishment; Nature.—Section 144, Constitution 1901, guarantees that each county shall have a circuit court or court of like jurisdiction, and leaves it to the discretion of the legislature what the court shall be.

8. Same.—Under § 147, Constitution 1901, when a county is detached from a judicial circuit, it, in effect, becomes a circuit in itself.

9. Statutes; Construction.—A statute must be construed as it stands, without conjecture, and the fact that a bill passed by the legislature, but vetoed by the governor, was intended to accomplish a given result, does not require a construction of another statute passed at the same session, in accordance with the vetoed measure.

10. Courts; Establishment; Circuits.—Where two counties are at some distance from each other, and each qualified to constitute a separate judicial circuit, and they were removed from the circuit in which they had formerly been, it cannot be presumed that the legislature intended to group them in a single circuit.

11. Statutes; Construction; Terms Used.—The fact that a statute operates to cause confusion in the practice of the court, does not warrant the court to construe it contrary to its terms; it must be construed as it stands.

12. Constitutional Law; Construction; Presumption.—In construing a statute the courts resolve all reasonable doubt in favor of its constitutionality, regardless of results.

(Sayre, J., dissents.)

APPEAL from Birmingham City Court.
Heard before Hon. E. H. CABANISS, Special Judge.

[Smith v. Stiles, Probate Judge.]

Mandamus by J. Q. Smith against J. P. Stiles, Judge of Probate of Jefferson County, Ala. From an order denying the writ, petitioner appeals. Affirmed.

The petition seeks to require respondent to receive and file a statement from the petitioner to the effect that he had announced his candidacy for judge of the city court of Birmingham. Respondent answers that he declined to receive and file the petition for the reason that the city court of Birmingham would be abolished under the consolidated court act approved August 16, 1915.

GREGORY L. & H. T. SMITH, SMITH & WILKINSON, and D. H. RIDDLE, for appellant. A. LEO OBERDORFER, for appellee.

The opinion of the court was delivered by Mr. Chief Justice ANDERSON, this case having been submitted and considered under new rule 46 (175 Ala., 65 South. vii).

(1-3) The title to the act of August 16, 1915 (Laws 1915, p. 279), known as the "Consolidated Court Law," is as follows: "To provide a circuit court in every county in the state, and for the consolidation of the chancery court and all other courts of record having the jurisdiction of the chancery court or circuit court or either of them into the circuit court, and to remove all pending causes and records into the circuit court, and to provide and regulate the proceedings therein."

The main subject dealt with, purpose sought, or object to be accomplished, as indicated by this title and which has been dealt with in the body of the law, was the establishment of one general circuit court system, to the exclusion of other trial courts having the jurisdiction of the circuit and chancery court; to provide a circuit court in every county in the state and to get rid of the others, whether by merger, consolidation, conversion, or abolition, and for the transfer of all cases pending in the other courts to the circuit court. The title deals with but one general subject, and all things done by the act are germane and cognate to the title, which provides for the establishment or maintenance of a circuit court system throughout the entire state to the exclusion of all other trial courts exercising chancery or circuit jurisdiction. In other words, the law provides for a circuit court in every county in the state and for wiping out

[Smith v. Stiles, Probate Judge.]

all the others, by merging them into the circuit court in counties which have other courts, by merely preserving the circuit court in counties having nothing but a circuit court, and by converting other courts into the circuit court in counties having no circuit court, but a law and equity court, to wit, Lee and Marengo. While a garbling of the title and a play upon words capable of different definitions could indicate two or more different subjects or give the title some ambiguity, yet when ·it is fairly considered in its entirety, and a plain common sense meaning is given the words employed, it plainly evinces a legislative purpose to deal with the one general subject of providing a circuit court in every county in the state, to the exclusion of all others therein mentioned, and everything done or contemplated by the act is germane to this one general object. We are not only not impressed with the contention that the act is repugnant to section 45 of the Constitution, but are at a loss to know how the things accomplished by the act could have been more properly expressed in the title or dealt with in the body.—*Thomas v. Gunter,* 170 Ala. 174, 54 South. 283, and cases there cited. Courts will not seize upon garbled expressions or strained definitions for the purpose of striking down a solemn legislative enactment, as it is our duty to uphold, rather than strike down, the acts of the legislative department, unless the same plainly transgresses our organic law. ·

(4) We think that this legislation was fully authorized by sections 148 and 171 of the Constitution, and that the thing thereby sought did not have to be done by piecemeal or patchwork, but was properly accomplished by one general law applicable to the entire state. Of course, section 148 of the Constitution provides for a consolidation of the courts; but there is nothing in this section preventing the establishing of a single court system throughout the entire state and the consolidation of all others in the counties having two or more into the one court. It may be true that where there is but one court in a county there is nothing to consolidate, but this fact will not prevent the establishment of the circuit court system, throughout the entire state, and the consolidation of other courts into same in the counties where two or more do exist. As to whether or not this would render it a local law will be discussed later on in this opinion. Section 171 of the Constitution gives the Legislature

the power to abolish any court, except the Supreme and pro-
bate courts, whenever its jurisdiction and functions have been
conferred upon some other court. We do not think that it would
require two separate and distinct laws to accomplish this result.
We think the Legislature could by one law confer the jurisdic-
tion of one court upon the other, and at the same time abolish
the court which has been denuded of jurisdiction, as the doing
of this would amount to the same thing as a consolidation under
section 148 of the Constitution. We think that these two sec-
tions of the Constitution must be considered in pari materia,
and that the former authorized a consolidation, while the latter
was intended as a safeguard authorizing the abolition of a court
when its jurisdiction was conferred upon another court, though
there had been no actual consolidation, but a mere transfer of
jurisdiction, and also to authorize the Legislature to transfer
the jurisdiction of one court to another, and to then and there
abolish the court, which was deprived of its jurisdiction. This
section 171 does not necessarily mean that the Legislature must
first by a separate bill transfer all the jurisdiction of the chan-
cery court to the circuit court, and then, in order to abolish
the chancery court, pass a separate bill doing so.

(5) We think the law in question is a "general" one as de-
fined by section 110 of the Constitution, as it applies to every
county in the state, and fixed for each a single uniform court
system, excepting none of them from its operation. The fact
that it works no material change of conditions in a few of the
counties, which may now have but one court, makes no differ-
ence, as it applies to and covers those counties as it does all
others. It would be a judicial monstrosity to hold that if one
county or other subdivision of the state enjoyed a good law, and
the Legislature enacted such a law for the entire state, said law
would be a local one because it previously existed in a county
or counties, and that the only way to give the state the benefit
of said law, the local law must first be repealed by a local act and
gotten out of the way before the enactment of a general law
on the subject. If the contention that this law is local, because
it makes no change in the court system of Winston county, which
has only a circuit court, is sound, then we could not by a gen-
eral law arrange a practice act for the entire state, if it already
existed in some of the counties. Nor could we have a general

jury law by modeling it after a satisfactory one, which existed in some one county, without first getting rid of said law by a local law before passing a general law on the subject. The framers of our Constitution intended no such a useless performance upon the part of the Legislature as a condition precedent to the passage of a state-wide law. The law in question is plainly a general law, and we do not think that a case can be found holding that such a law is a local one, and trust that the books may never contain such a holding. Moreover, we do not wish to intimate that a law dealing with circuit courts generally, in so far as they existed in the state, would be a local law, simply because a few counties in the state had no circuit court. Any law which deals with a general subject and applies it throughout the state, that is, wherever it exists in the state, is a "general law," although there is no subject upon which it may operate in some parts of the state. To hold that a law, in order to be a general one, must operate uniformly in every county and precinct in the state, would amount to holding that a general law could not be framed regulating all the cities in the state because there are no cities in some of the counties, or that a law regulating railroads, coal mines, rivers, pine forests, and many other general subjects would be "local" because the subject dealt with did not exist in some of the counties. The former decisions of this court striking down certain judicial circuits, because local laws and not advertised, cannot be so perverted as to pronounce such a law as above mentioned a local one. They dealt with a subject as confined to a few counties in the state, and did not attempt to deal with all circuit courts in the state or with a general subject in so far as it may have existed throughout the state.

As heretofore stated, the act in question provides for a circuit court in every county in the state, and which includes Lee and Marengo; whether by creating the same and destroying the existing one by merger or conversion matters not. These counties were circuits or court divisions of themselves, with but one court each, possessing the jurisdiction of the circuit and chancery courts (just such a court as the act fixes for all counties in the state, only one is called the law and equity court and the other the circuit court), and the only change made as to these counties is, perhaps, to change the name of the court; but the act gives each of them a circuit court, just as it does every other

county in the state, and we are not impressed with the contention, in brief of counsel, in another case involving this question, that the act applies only to Lee and Marengo as to providing a circuit court, or else gives two separate and distinct circuit courts to all of the other counties of the state. We think the act plainly and clearly provides a circuit court in every county in the state, with the jurisdiction of the circuit and chancery courts, and wipes out all other trial courts possessing the jurisdiction of the circuit or chancery courts, by whatever name they are called or wherever they may exist, and this is done in plain and unambiguous terms and which is fully sanctioned by the Constitution.

(6) Great importance is attached, in argument of counsel, to the status of Marengo and Lee counties, and it is suggested that as they were not in any particular circuit at the time of the passage of the consolidated court act, and as said act does not expressly create them into circuit courts but abolishes the law and equity court in said counties, they are left out, and the consolidated act must fall because it fails to do what it purports to do; for, if Lee and Marengo are not circuits, the act cannot operate as to them, and is not only a local law but is obnoxious to the Constitution for several reasons. With the premise admitted, the contention of counsel could be conceded, but Lee and Marengo counties are as distinctly circuits as Jefferson and Mobile. Lee was detached from the Third judicial circuit in 1907, after having been given a law and equity court with the jurisdiction of the circuit and chancery court, and could have been made a circuit like Jefferson and Mobile, as it had the requisite wealth and population, else it could not have been detached from a circuit. (Marengo was detached from the First judicial circuit in 1915.) The result was that it was a separate and distinct court subdivision of the state with a court of all the jurisdiction of the circuit court and more than was possessed by the circuit court in some of the counties and circuits. The act in question, in providing a circuit court in every county in the state, merely converted the Lee Law and Equity court into a circuit court, and, as the county had been detached and was a distinct subdivision of the state for court purposes, the act of detachment automatically and by necessary implication made it a circuit to all intent and purpose. Lee and Marengo had just such courts as this act contemplates shall exist throughout the state, and the

effect of same, as to these counties, was to change the name of the courts from the Lee and Marengo law and equity courts. to the Lee circuit court and the Marengo circuit court; they having been already, in effect, made circuits by the respective detachment acts and as authorized by section 147 of the Constitution. They did not have to be numbered or even named, if otherwise sufficiently designated, and the act plainly provides for a circuit court in Lee and Marengo counties, which had already been previously set apart to themselves, and if it is necessary to name them, as a mere matter of form, they can be known as the Lee county circuit and the Marengo county circuit, as that is what they are to all intents and purposes, and we must look to the substance and not to the form.

(7) It is suggested that the act in question cannot provide a circuit court in each county in the state, for the reason that this is done by section 144 of the Constitution. This section does not absolutely provide a circuit court in each county in the state to the extent of giving the Legislature no power or authority in the matter. Said section merely guarantees that each county shall have a circuit court, or a court with the jurisdiction of the circuit court, twice a year, leaving it to the Legislature to determine which it shall be, and the Legislature has seen fit in the present instance to provide a general circuit court system throughout the state to the exclusion of other trial courts of law and equity and which it had the authority to do. If the Constitution provided a circuit court in every county in the state, then Lee and Marengo had to be circuits, else they would not have been detached from other circuits, and the Legislature had no right to establish the law and equity court to the exclusion of the circuit court. This, however, is not what the Constitution says or means, as it simply guarantees a circuit court or one with like jurisdiction, leaving it to the Legislature to determine which it shall be, subject, of course, to other constitutional provisions.

(8) Under the Constitution of 1875, a circuit could not consist of less than three counties, but the Constitution of 1901 made considerable change in this respect, as indicated by section 147, which reads as follows: "Any county having a population of twenty thousand or more, according to the next preceding federal census, and also taxable property of three million five hundred thousand dollars or more in value, according to the next

preceding assessment of property for state and county taxation, need not be included in any circuit or chancery division; but if the value of its taxable property shall be reduced below that limit, or if its population shall be reduced below that number, the Legislature shall include such county in a circuit and chancery division, or either, embracing more than one county. No circuit or chancery division shall contain less than three counties, unless there be embraced therein a county having a population of twenty thousand or more, and taxable property of three million five hundred thousand dollars or more in value."

This section provides that a county of certain population and wealth need not be included in any circuit or chancery court division, meaning that they can be a circuit in and of themselves, just as Jefferson and Mobile have been for years, and as Lee and Marengo now are, and when such counties are left out of circuits, or are detached from a circuit, they in reality, and for all practical purposes, become circuits under the influence of section 147 of the Constitution.

(9) It may be true that the Legislature intended to make other arrangements as to Lee and Marengo counties by the general recircuiting bill which was vetoed by the Governor; but we must pass upon the status as existing when the act in question was passed, as the Legislature did not make it dependent upon the recircuiting bill, else they would doubtless have passed the recircuiting bill first, and we cannot assume that the Legislature intended a hiatus as to Marengo and Lee counties, or contemplated that the impossible could be accomplished by denying them a voice in the selection of their court officials. Neither the Constitution, nor the act giving the Chief Justice authority over trial courts, provides for holding courts except in circuits or counties having judges of their own. If we are to look at the various judicial bills proposed by the Legislature in ascertaining the intention of that body, we must conclude that, instead of the present bill being dependent upon bills that failed to become laws, there are many laws that were actually passed which were predicated upon the existence of the act in question. True, the Legislature intended to place Marengo and Lee counties in other circuits by the bill that was vetoed; but this does not conclude against their being circuits until said recircuiting bill became a law. Said recircuiting bill attempted many changes from the present arrangement, but it would be a violent assumption

to hold that Dallas was not in the Fourth circuit or Talladega in the Seventh, or Tuscaloosa in the Sixth, simply because the Legislature intended, by the bill that did not become a law, to place them elsewhere.

(10) It has also been suggested that, if Lee and Marengo shall be held to be circuits, how are we to determine whether the two constitute one circuit, or are separate and distinct circuits? The Legislature dealt with them separately, and has treated them throughout as distinct court subdivisions, and they are almost as far apart geographically as is possible for two counties in this state to be, and there is nothing to indicate a legislative intent to group them.

(11, 12) Much has been said about conditions that will exist if this "Consolidated Court Law" is upheld, and great apprehension is displayed as to how courts are to be held, especially in Lee and Marengo counties even if they are circuits. It is sufficient to say that we must deal with the present law, and not condemn it because of the infirmity of some other acts, and we could here end this opinion; but, as a matter of fact, the Legislature, upon the assumption that the act in question would be effective in 1917, has by other laws dispelled all cause for alarm by providing the machinery for holding a circuit court in every county in the state, by giving each circuit a judge, a solicitor, and each county a register, with two fixed terms of court, and section 165 of the Constitution as well as the Code provides for a circuit clerk in each county.

Much has been said in argument as to the inequality of the circuits, brought about by the Governor's veto of the recircuiting bill, and much could be said against conditions that will exist if the act in question is stricken down, as we would have restored 51 trial judges as well as 14 additional circuit judges, created by the present Legislature, to meet conditions wrought by the consolidated court act, and notwithstanding the Legislature has restored much of the jurisdiction now exercised by the law and equity courts to the old system of county courts. We are also aware of the fact that the veto of the recircuiting bill will save the state the salary of but a few judges and solicitors, which may be a small sum for jeopardizing the whole judicial system of the state and thwarting a legislative attempt to reform and equalize the circuits; but we must deal with conditions as they exist and as produced by the legislative and ex-

[Smith v. Stiles, Probate Judge.]

ecutive departments, and it is not within our province to criticize or commend the one or the other, or to say that the Legislature should have passed the recircuiting bill before passing the present one, or that the Governor should or should not have vetoed the recircuiting bill and the new jury law, which were intended to deal with conditions produced by the consolidated court law. The responsibility for present conditions rests with the Legislature and the executive, but only the responsibility of dealing with conditions thus produced rests upon this court, and we meet it as best we can, and it is our duty to indulge all reasonable doubt in favor of the constitutionality of solemn legislative enactments, regardless of results.

Counsel, in brief, suggest that the act does not conform to section 63 of the Constitution, in that it was not read on three different days in the House and Senate, though it is fairly admitted by counsel that the journal has not been examined. Ordinarily this would not amount to such an insistence as to merit the consideration of this point by this court, for the reason that counsel should examine the record and point out the defect in the journal if one existed, and not expect the court to look the matter up upon a mere doubtful suggestion that a defect exists. As this is a law, however, of considerable public importance, the journal has been examined and contains the recital alluded to in brief.

In the consideration of this case, we have considered it in connection with a companion case involving the same question, and have borne in mind the oral argument in both cases, as well as all briefs that have been filed upon the subject. (See *Taylor v. Hasty,* 70 South. 910; *Gilder v. Hasty,* 70 South. 910; and *Garrett v. Camp,* 70 South. 910, all infra.)

As the office to which the appellant sought to become a candidate has been abolished, after the time prescribed by the act, the respondent probate judge did not err in declining to receive the announcement of petitioner as a candidate for judge of the city court, and the special judge of the city court correctly denied the mandamus, and the judgment is affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN, MAYFIELD, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. SAYRE, J., dissents.