(76 South. 119)

OSBORN v. HENRY, Treasurer, et al.

(6 Div. 513.)

(Supreme Court of Alabama. May 24, 1917.
Rehearing Denied June 30, 1917.)

1. EVIDENCE ⬥41—JUDICIAL NOTICE—JUDICIAL DISTRICTS.

It is a matter of common knowledge that at the date of the passage and approval of the act submitting a constitutional amendment (February 28, 1911), as well as at the time of the adoption of the amendment and of the passage of the salaries act thereunder, the county of Jefferson composed one district of the Northwestern chancery division of the state, and had comprised a separate district of a chancery division since the

passage of the act of February 18, 1867 (Acts 1867) p. 702.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 56–60.]

2. WORDS AND PHRASES—"SALARY"—FIXING COMMISSIONS—PERCENTAGE.

The term "salary" as the Constitution applied it to the compensation of a public officer for services rendered does not denote the same class of compensation as indicated by the expressions "fees," "commissions," and "percentages."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salary.]

3. CLERKS OF COURTS ⬥1—OFFICERS—REGISTER OF CHANCERY COURT.

Where two counties are embraced in one chancery division, the register is the county officer of both counties, in view of the character of the primary services to be rendered in each.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 1.]

4. CLERKS OF COURTS ⬥1 — REGISTER IN CHANCERY — NATURE OF OFFICE — LEGISLATIVE DESIGNATION.

In the act of February 18, 1895 (Acts 1894–95, p. 884), to facilitate the transaction of business in the chancery court of Jefferson county, the reference "to the register of the chancery court, of Jefferson county" was a legislative designation of that official as a county officer.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 1.]

5. COUNTIES ⬥61—OFFICERS.

Generally it may be said that officers whose authority, duties, and powers are coextensive with the territorial limits or are confined within the limits of the county in which they have their qualifications for election or appointment come under the designation of county officers, and the fact that such officer exercises judicial power in certain instances extending beyond the confines of his county does not determine that he is not a county officer.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 86.]

6. CLERKS OF COURTS ⬥12—CLERK OF CHANCERY — SALARY — CONSTITUTIONAL PROVISIONS.

Const. 1901, § 163, provides that registers shall receive as compensation for their services only such fees and commissions as may be specifically prescribed by law, which fee shall be uniform throughout the state. Const. 1901, § 96, also provides for uniformity of compensation of public officers throughout the state in the way of costs, charges of courts, fees, commissions and allowances. Const. 1901, § 166, provides that registers in chancery may be removed from office by the chancellors, the cause to be entered at length upon the minutes of the court. Acts 1911, p. 47, submitted to voters an amendment to the Constitution, authorizing the Legislature from time to time, by general or local laws, to fix, regulate, and alter the costs, charges of courts, fees, commissions, allowances, or salaries to be charged or received by any county officer of Jefferson county, including the method or basis of their compensation, which amendment was adopted by the qualified voters of the state. Loc. Acts 1915, p. 374, fixed the compensation of sundry officers of Jefferson county, including the register in chancery, and provided a complete change of basis of compensation for this officer by substituting an annual salary in lieu of all other compensation, fees, or emoluments. Acts 1915, p. 279, consolidated the chancery court with the circuit court. Gen. Acts 1915, pp. 809, 811, provides for the appointment of a register of the circuit court of each county. *Held*, that Acts 1915, p. 374, fixing the compensation of the register in chancery of Jefferson county, applied

to the clerk of the circuit court of Jefferson county, and entitled such clerk to the annual salary provided, and, in view of the amendment submitted in Gen. Acts 1911, p. 47, Const. 1901, §§ 163, 166, had no application.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 34.]

7. CLERKS OF COURTS ⊜—12—COMPENSATION— STATUTES.

In view of the amendment of the Constitution, constituting an exception from its provisions as to uniformity of compensation for county officers, and allowing the Legislature to prescribe that officials of Jefferson county shall be paid salaries rather than fees, etc., the general provision in the Judiciary Act relating to the compensation of the registers of the circuit courts throughout the state has no application to such officials in Jefferson county.

[Ed. Note.—For other cases, see Clerks of Courts, Cent. Dig. § 34.]

Anderson, C. J., and Sayre, J., dissenting.

Appeal from Circuit Court, Jefferson County; John H. Miller, Judge.

Taxpayer's suit for injunction by R. E. Osborn against M. V. Henry, as treasurer of Jefferson County, and others. Decree sustaining demurrer to the bill, and plaintiff appeals. Affirmed.

C. B. Powell and Cabaniss & Bowie, all of Birmingham, for appellant. W. K. Terry and John P. McCoy, both of Birmingham, for appellees.

THOMAS, J. This is a bill by a taxpayer, to enjoin the payment of the salary of the register of the circuit court of Jefferson county.

By the act of the Legislature of August 16, 1915 (Acts 1915, p. 279), the chancery court was consolidated with the circuit court; that is to say, the chancery court was abolished under the authority of sections 148 and 171 of the Constitution. Smith v. Stiles, 195 Ala. 107, 70 South. 905. By section 12 of an act "to further prescribe and regulate the qualifications, number, designation, duties, and powers of the circuit judges of the state, etc.," approved September 25, 1915 (Gen. Acts 1915, pp. 809, 811), it was provided as follows:

"There shall be a register of the circuit court of each county to be appointed as follows: Where there is only one judge of the circuit the register shall be appointed by such judge; where there are more judges than one, the presiding judge shall appoint the register. The register shall hold office for the term of the judge appointing him, but subject to removal at the pleasure of the judge by order entered on the minutes of the court; the register shall give bond in the sum, and payable, and conditioned as the bonds of registers in chancery are required on the date of the approval of this act; the register shall perform all the duties heretofore required of registers in chancery by law; he shall have the power to render decrees pro confesso on any Monday in all cases in which service has been perfected; and shall be entitled to receive all the fees prescribed for registers in chancery; provided, that in circuits composed of only one county having three or more judges that the judge numbered first shall appoint the register in chancery."

The register of the circuit court of Jefferson county was appointed under the provisions of this act, and was holding office, by virtue of such appointment, at the time the bill in this case was filed. It is alleged in the bill that under the "supposed authority" of an act of the Legislature entitled, "An act to fix the compensation or salaries to be paid the sheriff, the judge of probate, the tax collector, the tax assessor, the clerk of the circuit court, the clerk of the criminal court, and the register in chancery of Jefferson county, and to regulate the payment of the same; to provide for the selection of clerical and other assistance to said officers, and the manner of fixing their compensation and paying the same, and to provide rules and regulations for the conduct and operation of such offices made necessary by changing the method and basis of compensation of such officers, and to prescribe when said act shall go into effect" (Local Acts 1915, p. 374), the board of revenue of Jefferson county has adopted rules and regulations for the conduct of the offices named, except that of clerk of the criminal court, which office has been abolished; that under the operations of said rules and regulations, made to apply to the office of register of the circuit court, the first installment of salary to be paid under the provisions of said act will become due on the 1st day of February, 1917. It is further averred that Ernest Matthews, as the register of said circuit court of said county, is claiming the right to be paid the salary provided for "the register in chancery" by said act, and that "the said M. V. Henry, as treasurer of Jefferson county, has announced his intention of paying an installment of said salary to the said Ernest Matthews as such register of the circuit court, and has prepared books for keeping a salary account between him and the said Matthews, as such register"; that unless payment of the same is prevented by injunction, such treasurer will, on February 1, 1917, pay the said register of the circuit court the installment of salary due on said date, as by said act provided to be paid to the register in chancery; that such payment will be illegal, unwarranted by law, and will operate to the injury of complainant and other taxpayers of said county. It is the insistence of appellant that said act of the Legislature (Local Acts 1915, p. 374), in so far as it provides that a salary shall be paid to the register in chancery of Jefferson county, is repugnant to section 163 of the Constitution, which provides that registers shall receive as compensation for their services "only such fees and commissions as may be specifically prescribed by law, which fees shall be uniform throughout the state," and that said section of the Constitution does not authorize the act in question, "for the reason that the register in chancery is not a county officer." It is further contended that the act offends section 96 of the Constitution, as

to uniformity of compensation of public officials. The respondent M. V. Henry, as treasurer of Jefferson county, demurred to the bill for want of equity; and the appeal is taken from the decree sustaining the demurrer to the bill.

The act of September 14, 1915 (Local Acts 1915, p. 374), was the result of the act of February 28, 1911 (Gen. Acts 1911, p. 47), which submitted to the qualified voters of the state an amendment to the Constitution authorizing the Legislature, from time to time, by general or local laws, "to fix, regulate, and alter the costs, charges of courts, fees, commissions, allowances or salaries to be charged or received by any county officer of Jefferson county including the method or basis of their compensation," such amendment having been duly submitted to, and adopted by, the qualified voters of the state. This act (of September 14, 1915), fixing the compensation of sundry officers of Jefferson county, including the register in chancery, provided a complete change of basis of compensation for this officer by substituting an annual salary "in lieu of all other compensation, fees or emoluments," fixing such salary at $3,600 payable in equal monthly installments out of the county treasury. The provisions of the act were not to go into effect until "the expiration of the term of office of the several officers * * * named." The terms of office of the chancellor and the register in office at the date of the passage of the act were due to expire on January 15, 1917.

[1] It is a matter of common knowledge that at the date of the passage and approval of the act submitting the constitutional amendment (February 28, 1911), as well as at the time of the adoption of the amendment and of the passage of the salaries act thereunder, the county of Jefferson composed one district of the Northwestern chancery division of the state. In fact, this county had comprised a separate district of a chancery division since the passage of the act of February 19, 1867 (Acts 1867, p. 702; Code 1867, § 696). Though the counties of Walker and Winston had long been one chancery district, by the act conferring on the circuit court all chancery jurisdiction and providing for the appointment of a register in chancery for each of said counties, such respective registers were in a sense treated as county officials. Local Acts 1907, p. 723. When the county of Lee was withdrawn from its sometime chancery division and judicial circuit, the officials of the Lee county law and equity court, including the clerk and register, were in effect made county officials. Local Acts 1907, pp. 289, 290. And the same is true as to the effect of the creation of the law and equity court of Marengo county. Gen. Acts 1909, p. 339. Again, by the act of July 31, 1907, St. Clair county was divided into two chancery districts, and a register in chancery provided for each. Gen. Acts 1907, p. 530. Each of the other counties of the state was embraced in a chancery division, as a separate district thereof, with the exception of Mobile and Baldwin, each of which, by statutory provision, was to provide and maintain its proportionate part of the expense of stationery, dockets, etc., of a common chancery district. Code, § 3082.

So much for the history of the general legislative policy in dealing with the register in chancery, from the time when several counties were included in a chancery district, to the time when each county became a separate district, with the exception of Baldwin and Mobile.

The Constitution of 1901 provided as follows:

"Sec. 163. Registers in chancery shall be appointed by the chancellors of the respective divisions, and shall have been at least twelve months before their appointment, and shall be at the time of their appointment and during their continuance in office, resident citizens of the district for which they are appointed. They shall hold office for the term for which the chancellor making such appointment was elected or appointed. Such registers shall receive as compensation for their services only such fees and commissions as may be specifically prescribed by law, which fees shall be uniform throughout the state."

The principle of uniformity, throughout the several counties of the state, as to the compensation of public officers in the way of costs, charges of courts, fees, commissions, and allowances, is declared also by section 96 of the Constitution.

Authority and method for removing registers in chancery from office are to be found in section 166 of the Constitution, which provides that:

"Registers in chancery may be removed from office * * * by the chancellors, * * * for cause, to be entered at length upon the minutes of the court."

So much for the provisions of the Constitution sought to be amended by the amendment, heretofore adverted to, under which the Jefferson county salary act was passed.

[2] It must be conceded that the term "salary," as the Constitution applies it to the compensation of a public official for services rendered, does not denote the same class of compensation as indicated by the expressions "fees," "commissions," "percentages." Brandon v. Askew, 172 Ala. 160, 54 South. 605; Reese v. Cleburne Co., 139 Ala. 299, 35 South. 879; Troup's Case, 109 Ala. 162, 19 South. 503; Dawson v. Matthews, 105 Ala. 485, 17 South. 19; Tillman v. Wood, 58 Ala. 578.

If, therefore, sections 96 and 163 of the Constitution had application to the register in chancery of Jefferson county after the time the salary bill for that county went into effect by its express terms, there was error in sustaining the demurrer to the taxpayers' bill filed in this cause.

[3] Does, then, the legal status of Mobile and Baldwin counties—their being embraced in a chancery division as a single district—have the effect to prevent the application of

the Jefferson County Salary Act to the register in chancery of that county or chancery district? We think not. In Mobile and Baldwin the register is the county official of both counties, in view of the character of the primary service to be rendered in each, an'd the expenses of his office are prorated between the two counties. Similarly, the tax assessor, tax collector, and the probate judge, while primarily county officials, are also quasi state functionaries, in the sense that they are required to perform important services in the fixing or gathering of the state's revenues; the latter, in addition, being charged with the appointment of managers of elections, etc. Our view just here is strengthened by the analogy to be found in the recent decision as to the judicial status of Lee and Marengo counties under the Consolidated Courts Act (Smith v. Stiles, 195 Ala. 107, 70 South. 905), as well as by that to be found in the late decision settling the relative status of the circuit solicitor and of the county solicitor in Jefferson county after the passage of the several acts of 1915, looking to the consolidation of the courts of the state, as affecting said county. State ex rel. Tate v. Fort, as Judge, etc., 199 Ala. 321, 74 South. 387; State ex rel. Gaston v. Black, as Solicitor, etc., Id.

[4] In the act of February 18, 1895, to faciliate the transaction of business in the chancery court of Jefferson county, the register in chancery was referred to as "the register of the chancery court of Jefferson county"; and, while it is true that this reference was an incidental one, the fact remains that it was a legislative designation of that official as a county official. Weakley's Local Laws of Jeff. Co., p. 608; Acts 1894–95, p. 884.

[5] In a general sense it may be said that officers whose authority, duties, and powers are coextensive with the territorial limits of the state are state officers, and that those officers whose authority, duties, etc., are confined within the limits of the county in which they have their qualifications for election or appointment, and concern more especially the people of that particular county, come under the designation of "county officers." State ex rel. Atty. Gen. v. Burns, 38 Fla. 367, 21 South. 290. In the Burns Case the court said:

"Nor is it any objection to considering him a municipal officer though some of the functions to be performed by him might be for or of benefit to adjoining counties or to the state. Tax assessors, tax collectors, sheriffs, county commissioners, etc., perform important duties for the state, but are nevertheless county officers." Opinion of Justices, 13 Fla. 695.

In City of Philadelphia v. Martin, 125 Pa. 583, 17 Atl. 507, the definition of "an officer of the county" is one by whom the county performs its usual political functions.

In State ex rel. Holmes v. Dillon, 90 Mo. 233, 2 S. W. 417, the court declared that in assigning officials between the two classes,

"general" and "local," the words in a statute or a Constitution must be given their usual and ordinary meaning, an'd that the expression in the Constitution, "any state officer," would not embrace the sheriff of one of the counties of the state.

The term, "county officer," was said (In re Whiting, 2 Barb. [N. Y.] 513, 516) to "comprehend all those who are appointed or elected for a county, and who must reside, and perform the duties of their offices, within their counties." In re Carpenter, 7 Barb. (N. Y.) 30, 34.

Mr. Throop, in his work on Public Officers (section 26), bases his 'differentiations of county or local officers from state or general officers on the definitions we have quoted from In re Whiting, supra; People v. Bennett, 54 Barb. (N. Y.) 480.

It is true that in the case of Sheboygan v. Parker, 3 Wall. 93, 18 L. Ed. 33, 'defining the status of the board of supervisors and distinguishing between "local" and "general" officers, it was said, of the board:

"They do not exercise any of the political functions of county officers, such as levying taxes, etc. They do not exercise, 'continuously, and as a part of the regular and permanent administration of the government, any important public power, trust or duties.' "

This, however, cannot be accepted as a general and uniform classification, applicable to distinguish the official in every case. State v. Kennon, 7 Ohio St. 562. For example, the fact that process issues by the clerk from a given court to another county does not determine that such issuing officer is not a county official. Similarly, although the official performs some function of the general government, as in the assessment or the collection of the taxes (McLendon v. Empire M. Co., 74 South. 937[1]), or in the appointment of managers of elections, or (as county solicitor) in prosecuting for the state (Ex parte Wiley, 54 Ala. 226), he is nevertheless held to be a county official. Again, the fact that the official exercises judicial power, in certain instances extending beyond the confines of his county, does not determine that such official is not a county official. City court judges, formerly (see Code 1907, § 3300; State ex rel. Winter v. Sayre, 118 Ala. 1, 31, 24 South. 89) county judges and judges of probate fall within the latter class. For like analogy, as to municipal officers, see Draper v. State ex rel. Patillo, 175 Ala. 547, 57 South. 772, Ann. Cas. 1914D, 301; State ex rel. Wilkinson v. Lane, 181 Ala. 646, 62 South. 31; Oaks v. State (App.) 75 South. 818.

[6] It is immaterial that the chancery court has been abolished and its jurisdiction and power conferred on the circuit court. Likewise it is immaterial that the respective officials discharging the duties and exercising the powers of a court sitting in equity are called, respectively, judge of the circuit court and register of the circuit court. The

[1] 199 Ala. 482.

change of the designation of the official sought to be compensated by a salary rather than by fees, commissions, and allowances as formerly is likewise immaterial. The purpose and scope of the constitutional amendment allowing exceptions to the general rule of uniformity with respect to compensating county officials, as well as of the act passed pursuant thereto, is clear—to compensate a certain official by salary for the discharge of given duties or services, imposed by law, within the county. It is immaterial by what name the office or official is or may be thereafter designated. The register in chancery is superseded by the register of the circuit court, who now performs the same general services in Jefferson county that were formerly required of the older officer, all the duties heretofore required by law of registers in chancery. Act 1915, p. 809.

The fact that the Consolidation Act provided that the register of the circuit court should receive as compensation the fees prescribed by law for registers in chancery does not relieve that official from the provisions of the act of September 14, 1915 (page 374), fixing as the compensation of such register in Jefferson county the annual salary of $3,600, payable out of the county treasury in equal monthly installments and at the end of each month.

Under section 2 of the Jefferson County Salary Act the register for Jefferson county is required to continue to collect the fees, etc., heretofore prescribed by law for registers in chancery, and to pay the same into the county treasury as other moneys belonging to the county are paid.

[7] In view of the exception, from the provisions of the Constitution as to uniformity of compensation for county officials, and of the permit thereby, that the Legislature may prescribe that officials in Jefferson county be paid salaries rather than the fees, commissions, etc., usually provided for such officials in other counties of the state, the general provision in the Judiciary Act relating to the compensation of registers of the circuit courts throughout the state has no application to such official in Jefferson county, Ala.

The general legislation intended to establish a uniform system, given effect in Isbell v. Shelby County, 10 Ala. App. 639, 65 South. 706, and authorities there cited, has no application here, in view of the Jefferson county amendment to the Constitution.

The demurrer to the bill was properly sustained.

Affirmed.

McCLELLAN and GARDNER, JJ., concur in opinion. MAYFIELD and SOMERVILLE, JJ., concur in result. ANDERSON, C. J., and SAYRE, J., dissent.

ANDERSON, C. J. In my opinion, Matthews holds office as register of the circuit court, an office of statutory creation under section 12, Act 1915, p. 811, and that he is, to all intent and purpose, a county officer. I do not think that it is therefore necessary to decide whether or not the "register in chancery," as provided for in section 163 of the Constitution of 1901, is or is not a county officer, as we are dealing with one of statutory creation and not one provided for under said section 163 of the Constitution. Said section 163 provides for the appointment of a register in chancery by the chancellor, and when the chancery court and the office of chancellor were abolished by the Consolidated Court Act, this necessarily abolished the office of register of the chancery court. There being no chancellor, there can be no register in chancery under the Constitution. Therefore the Legislature, being cognizant of this fact, created the office of register of the circuit court for each county. I do not therefore take issue with the holding of the majority that the salary amendment of the Constitution as to the compensation for county officers in Jefferson county includes the office in question. Nor do I contend that the Legislature cannot now place him upon a salary, but I do dissent from the holding that he has been placed upon a salary by Local Act of 1915, p. 374. To my mind, this act attempts to deal with the old register in chancery under the Constitution, and not the register of the circuit court as created by Act 1915, p. 811. It is true that this local act was passed after the passage of the Consolidated Court Act, but it was introduced long before the adoption of the Consolidated Act, and was passed before the act of September 25, 1915, creating the present office, and I am of the opinion that said local act was intended to apply to the old register in chancery as it existed when the bill was introduced, and that the Legislature overlooked the fact that the office of register in chancery has been abolished. It could hardly be said that the act was intended to apply to the new office of register of the circuit court, which was not created until some days after the passage of said local act. Moreover, if it be conceded that the Local Salary Act was broad enough to apply to the subsequently created office in question, then I think that so much thereof as fixes the salary was repealed by necessary implication by the subsequent Act 1915, p. 811, § 12, which provides, without limitation or qualification, that the registers of the circuit courts "should be entitled to receive *all the fees* prescribed for registers in chancery." (Italics supplied.) While courts do not generally invoke repeals by implication, yet when the Legislature attempts to revise and deal with an entire subject and to make all necessary provision connected therewith, although the last act contains no express repealing clause, it must operate as a repeal of previous enactments upon the same subject.

I dissent from the holding of the majority.