(79 South. 379)
STATE ex rel. ADAMS v. McLELLAN.
(3 Div. 358.)
(Supreme Court of Alabama. June 6, 1918.)

1. STATUTES ⬤═93(8)—GENERAL LAW—ACT RE-ESTABLISHING COUNTY COURTS.
Gen. Acts 1915, pp. 862–865, re-establishing the county courts provided for in Code 1907, § 6698, in all counties wherein the same have been abolished, except in those having a population of 50,000 or more, etc., is a general, not a local, law.

2. STATUTES ⬤═92—LEGISLATIVE CLASSIFICATION—POPULATION.
Classification for legislative purposes may be validly predicated of population as shown by a past or a future census.

3. STATUTES ⬤═141(2) — TITLE — CONSTITUTION.
Gen. Acts, pp. 862–865, entitled "An act to re-establish the county courts which are provided for in article 3 of chapter 198 of the Code of Alabama in all counties wherein the same have heretofore been abolished," etc., complies with Const. 1901, § 45, as to re-enacting, amending, or extending statutes.

4. CONSTITUTIONAL LAW ⬤═46(3)—CONSTITUTIONALITY OF PARTICULAR PROVISIONS OF ACT—PROCEEDINGS FOR DETERMINATION.
Quo warranto to determine whether the clerk of the circuit court is still clerk of the county court of the county does not afford appropriate occasion to determine whether provisions of the statute relating to fees offend Const. 1901, § 96, prohibiting local laws regulating compensation of public officers.

5. STATUTES ⬤═16(1)—AMENDMENT ON PASSAGE TO CHANGE PURPOSE—CONSTITUTION.
Senate Bill No. 489, which became, after amendment, Gen. Acts 1915, pp. 862–865, re-establishing county courts provided for in Code 1907, § 6698, in all counties wherein they had been abolished, etc., was not so amended on its passage as to change its original purpose in violation of Const. 1901, § 61, though, through a justified classification, some counties were not affected.

6. STATUTES ⬤═283(1)—SIGNATORS OF CONFERENCE REPORT — APPOINTMENT — PRESUMPTION.
Journal of House not being required by Constitution affirmatively to show names of members of committees on conference, it will be presumed, in absence of contrary recital, that signators to conference report were duly constituted members of conference committee.

⬤═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7. STATUTES ☞283(1) — CONFERENCE RE-
PORT—SUBSTITUTION OF MEMBER OF COM-
MITTEE—PRESUMPTION.

Where the House appointed members to con-
ference committee, but the report was signed by
only two, one of whom, was not one of original
three named in journal, it will be presumed the
member signing but not originally appointed
was substituted by the House for either of two
members originally appointed who did not sign.

8. STATUTES ☞16(1)—ADOPTION OF REPORT
OF COMMITTEE ON CONFERENCE—AMENDMENT
OF BILL.

The adoption by both House and Senate of
the report of a committee on conference effected
the amendment of the bill under consideration
as agreed upon by the committee.

Appeal from Circuit Court, Escambia
County; A. E. Gamble, Judge.

Quo warranto by the State of Alabama, on
the relation of R. E. Adams, against M. R.
McLellan. From an order for respondent,
the State appeals. Order affirmed.

G. W. L. Smith, of Brewton, for the State.
Hamilton & Leigh, of Brewton, for appellee.

McCLELLAN, J. Quo warranto to deter-
mine whether the clerk of the circuit court
of Escambia county (relator) is still the
clerk of the county court of Escambia county,
as provided in local acts approved February
26, 1889 (Acts 1888–89, p. 657); or whether
the judge of the county court of Escambia
county is the clerk of the county court, as
provided in Code, § 6698, reading:

"The judges of the county courts are the
clerks of their respective courts, but may, at
their own expense, employ a clerk, who may
do all acts not judicial in their character."

The application of the quoted statute (sec-
tion 6698) depends upon the effectiveness, the
validity of the act approved September 25,
1915 (Gen. Acts 1915, pp. 862–865), bearing
this title:

"An act to re-establish the county courts
which are provided for in article three (3) of
chapter one hundred and ninety-eight (198) of
the Code of Alabama in all counties wherein
the same have heretofore been abolished, except
in counties having a population of fifty thou-
sand (50,000) or more according to the last
preceding Federal census, and to define the pow-
er, jurisdiction and duty of all the county
courts which are hereby re-established and of
all the county courts which are provided for by
article three (3) of chapter one hundred and
ninety-eight (198) of the Code of Alabama, and
to prescribe the manner in which prosecutions
for misdemeanors shall be begun, tried and de-
termined therein and appeals taken therefrom,
and to transfer all indictments pending in any
county court to the circuit court of the county
where found for trial therein, and to repeal all
laws, whether local, general or special, in con-
flict with the provisions of this act."

[1, 2] If the act of 1915 was enacted ac-
cording to the forms prescribed in the Con-
stitution, and if it offends no provision of
the organic law, one of its effects was to
constitute the judge of the county court of
Escambia county the clerk thereof in virtue
of the restored provisions of Code, § 6698, op-
erating to repeal the local act whereby the

clerk of the circuit court of Escambia county
was constituted the clerk of the county court.
Thomas and Torbert Cases, cited infra. A
large number of objections are laid against
the act of 1915 that are predicated of assert-
ed offendings therein or thereby of provi-
sions of the Constitution. Several of these
objections express the contention that the
act of 1915 is a "local," not a "general," law,
as those laws are defined in section 110 of
the Constitution. In responses to applica-
tions for rehearing in Thomas v. State ex
rel., etc., 200 Ala. 661, 77 South. 35, 36, 37,
and in State ex rel., etc., v. Torbert, 200
Ala. 663, 77 South. 37, 39, 40, the act of 1915
was held to be a general, not a local, law.
The court continues satisfied with the con-
clusion then attained and given effect. It re-
sults that objections numbered 1, 2, 3, 4, 5,
and 8 in the demurrer to the answer, based
upon or referable to the idea that the act
of 1915 is, in any respect, a local, not a gen-
eral, law, are without merit. It is settled in
this jurisdiction that classification, for legis-
lative purposes, may be validly predicated of
population as shown either by a past or a
future census. Board of Revenue v. Huey,
195 Ala. 83, 89, 70 South. 744.

[3] That the above-quoted title of the act
of 1915, when read in connection with the
body thereof, manifests a compliance with
the requirements of section 45 of the Consti-
tution, is not, we think, debatable. Torbert's
Case, supra. According to the same authori-
ty, the act of 1915 efficiently, validly applied
the provisions of article 3 of chapter 198 of
the Code of 1907 to the re-established county
courts, except as the act of 1915, itself, oth-
erwise prescribes.

It is insisted that this act offends section
96 of the Constitution. That section reads:

"The Legislature shall not enact any law not
applicable to all the counties in the state, regu-
lating costs and charges of courts, or fees, com-
missions or allowances of public officers."

The argument is that the whole act is in-
valid because the effect of the act's provi-
sions is to destroy the uniformity exacted by
section 96 of the Constitution. See opinion
of Justice Thomas in Osborn v. Henry, 200
Ala. 353, 76 South. 119. In section 7 of the
act it is provided:

"That if any section, clause or provision of
this act shall be declared to be unconstitution-
al it shall not be held to affect any other sec-
tion, clause or provision, but the same shall
remain in full force and effect."

[4] If it should be assumed, for the occa-
sion only, that provisions of the act effected
to destroy the uniformity exacted by section
96 of the Constitution, the provisions so
operating can be stricken from the act, thus
eliminating the separable invalid portions, and
leaving a complete, sensible enactment that is
capable of observance and enforcement. State
ex rel., etc., v. Montgomery et al., 177 Ala. 212,
240–242, 59 South. 294, and cases cited.
When the courts are properly invoked to de-

termine the measure of the compensation to be paid officers for services within the purview of this act of 1915, the question whether particular provisions of the act offend section 96 of the Constitution may be then considered and conclusively decided; the present proceeding, quo warranto, not affording the appropriate occasion to that end. This view was fully stated in State ex rel., etc., v. Montgomery et al., supra, with the result that the application of the distinction indicated rendered unnecessary—because premature in a proceeding on quo warranto—the decisions of questions that, to resolve, would not lead to the invalidity of the entire enactment.

[5] There is no merit in the contention that the Senate Bill No. 489—which became, after amendment. the act of 1915—was so amended on its passage as to change its original purpose; a course inhibited by section 61 of the Constitution. Its original purpose was to re-establish the county courts. As finally approved by the Houses and signed by the Governor, this original purpose was effected. The fact that through a justified classification some of the counties of the state were not affected by the act did not, of course, operate to change the bill's original purpose.

[6, 7] The only other objections to the validity of the act of 1915 relate to the matter of its amendment and passage by the Houses. The bill originated in the Senate. It was numbered 489. The committee to which it was regularly referred reported the bill with an amendment. The amendment was acceptable to the Senate; and, after the bill's amendment, it was regularly approved by the Senate. Up to this point every applicable requirement of the Constitution with respect to the passage of bills was observed. The bill, as passed by the Senate, was copied and sent over to the House. The House amended the bill. The Senate declined to accept the House amendments. A conference was agreed to by the bodies; and conferees, three in number from each House, were named. Subsequently what purported to be a conference report" was presented to the respective bodies. The House conferees, whose names appear in the journal, were Messrs. Blackwell, Fite (Tuscaloosa), and Darden. The conference report presented was signed by the three Senators who, the journal shows, were appointed by the Senate. On the part of the House the report was signed by Mr. Blackwell, who, the journal of that body shows, was appointed a member of the committee on conference. The only other signator, on the part of the House conferees, was Mr. Lapsley. The journal of the House does not disclose his appointment as a member of the committee on conference with respect to the disagreement of the bodies as to Senate Bill No. 489. Since the journal is not re-

quired by the Constitution to affirmatively show the names of the members of committees on conference, it will be presumed, in the absence of a contrary recital in the journal, that the signators to a conference report were duly constituted members of a conference committee to consider and report upon the subject of disagreement between the House and the Senate. State ex rel. v. Buckley, 54 Ala. 599, 613. In this instance, it will be presumed, nothing to the contrary being disclosed by the journal, that Mr. Lapsley was substituted by the authority of the House for either Mr. Fite or Mr. Darden, members of the conference committee as originally constituted. In form and phrase the conference report presented to the House, and to the Senate as well, bore the affirmation that Messrs. Blackwell and Lapsley were conferees on the part of the House. If Mr. Lapsley had not been constituted a conferee on the part of the House, certainly that body would not have recognized or accepted his action in the premises. The journals disclose that, in every instance where a yea and nay vote is exacted by the Constitution on the passage and amendment of bills, it was taken and recorded as the organic law prescribes. The report of the conference committee was adopted by both of the bodies in accordance with the Constitution's prescriptions. Board of Revenue v. Crow, 141 Ala. 126, 150, 151, 37 South. 469.

The enrolled bill, signed by the Governor, was the bill to which the Senate and House had given their constitutionally expressed approval.

[8] The adoption by both of the bodies, of the report of the committee on conference effected the amendment of the bill so as to substitute 50,000 population for 75,000 population in the title of the act and elsewhere in the act.

The order or judgment appealed from is due to be affirmed.

It is affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.