ERWIN, Adm'x, v. THE BR. BANK AT MOBILE.

1. An administratrix *ad colligendum*, is not such a representative of the estate as to require a presentation of a claim against the estate, within eighteen months after the grant of letters to her.

2. An allegation in the declaration, that the note sued on was payable to Billups Gayle, cashier, or bearer, in consideration whereof the defendant promised to pay the plaintiff, &c., is sufficient upon demurrer, to show, that the Bank was entitled to maintain the action, under the statute.

Error to the Circuit Court of Clarke. Before the Hon. J. Bragg.

ASSUMPSIT by the defendant in error, on a promissory note, payable to B. Gayle, cashier, or bearer, made by the defend-

ant's intestate.   The declaration describes the note thus, and alledges a promise to the bank.   The defendant demurred to the declaration, which being overruled, she pleaded the general issue, and the statute of non-claim.

The only question raised upon the trial before the jury was, whether a presentment of the note was necessary, to an *administrator ad colligendum*, to prevent the bar of the statute of *non-claim*.   The court ruled that it was not, and that the statute of non-claim, did not apply to the case of an administrator *ad colligendum*.   To which the defendant excepted, and which, with the judgment of the court on the demurrer to the declaration, are assigned as error.

J. A. CAMPBELL and F. S. BLOUNT, for the plaintiff in error.

One of the questions presented by the record is, whether a creditor is required to present his claim within eighteen months from the grant of letters of administration, to collect the goods of the deceased, in order to have the bar of the statute of non-claim?

1. At common law—The ordinary, or his committee by writ *ad colligendum*, &c. had only the power of an administrator *durante minore aetate*.   What this power is, see Com. Dig. Administration, F.   Com. Dig. Administrator, A.

An administrator during the minority of one entitled to administration, has for the time, all the power and authority of an absolute administrator. Com. Dig. Administration, F., Co. 2 Just. 389.

Administrator *ad colligendum* is a special administrator. Their authority, while it exists, is that of an absolute administrator.   He may sell goods that would otherwise perish. 3 Bac. Ab. 13; 11 Viner's Ab. 87, 102; Price v. Simpson, Cro. Eliz. 718.   He may pay debts due by the deceased. Com. Dig. Admin'n, F; Briers v. Godbold, Hob. 250; Prince's case, 5 Coke, 39 b; 2 Andres. 132, cited in Petersdorff's Ab. 1 vol. 169, 9 vol. 205; 11 Vin. Ab. 87.   In the case of Lord Grandison v. Countess of Dover, reported in Skinner's Rep. 156, it is said that the king had, and was used to grant letters *ad colligenda bona defuncti*, which was in the nature of

a commission, and to dispose for the good of the soul of the the intestate, as well as for the payment of his debts, funeral charges, &c., and then to his wife and children. And this w as the common law until the stat. 39 Edw. III.

For the payment of debts he may dispose of things not perishable. *Supra* and Toller's Ex'rs 404-5. He may also receive debts due to the deceased. Com. Dig. Adm'n, F, 3 Leon. 103. Or may maintain actions for the recovery of them. 2 P. Wms. 576 ; Toller's Ex. 404.

2. By statute—By the act of 1803, amended by the act of 1810, the administrator to collect the goods may exercise all the powers of an absolute administrator, and is liable in the same manner. Toul. Dig. 180, § 4 ; 324, § 21 ; Clay's Dig. 222, § 8.. The clause of the latter statute, providing that suits shall not abate by the appointment of administrator, or administrators, in chief, which were commenced by administrator *ad colligendum*, refers to suits in progress at the time the latter's authority terminates. The right to sue, and the liability to be sued, is derived both from the common law, and from the act of 1803, conferring the right and liability on the chief justice of the county court, to which right and liability the administrator to collect was substituted by the act of 1810. Toulmin's Dig. 180, § 4 ; 324, § 21 ; Clay's Dig. 222, § 8. Without this construction, the administrator to collect had no authority to bring suit under the statute, unless as absolute administrator for the time being. The statutes creating the various kinds of special administrators known to our probate courts, do not define their powers and authority. They take into their possession the property of the estate, and exercise the powers pertaining to absolute administrators. Clay's Dig. 220, § 1 ; 222, § 6, 8, 10 ; 227, § 30. The statute of non-claim (Clay's Dig. 195, § 17,) requires the claim to be presented to *the* executor or administrator. The plea operates as a complete bar, and a creditor, or any person interested in the distribution has a right to insist upon it. 6 Porter, 32.

3. As to the demurrer—The court should have sustained the demurrer to the declaration. It shows no property in the plaintiff to the note sued on. To do this, it should have averred " that the note was made payable to the plaintiff by

the name and description of B. Gayle," or that the same "was indorsed" to the bank, with proof of the fact. Walker v. Br. Bank at Mobile, 3 Ala. 153 : Smith et al. v. Bank at Mobile, 5 Ala. 26.

The only evidence offered by plaintiff was the writ and note.

A. B. COOPER, contra.

The defendant in error contends that the demurrer was properly overruled. See 7 Ala. 383.

As to the duties and powers of an administrator ad colligendum, such administrator has not the powers of an administrator, minore aetate and the Institute does not support the doctrine laid down in Comyn. See 2 Inst. 398. But see 2 Kent, 5 ed., 414; 1 Wms. Ex. 292; 2 Blacks. 504-5; 1 Lomax, 145; Toller, 106; 3 Dyer, 255; 11 Viner, 86-7; 3 Thomas's Coke, 320, note T.

From these authorities it is clear that such grant was a special, limited grant, not only in respect to time, but in respect to powers.

Special administrations are frequently granted in England. See 1 Haggard, 136; Addams, 127.

The statutes referred to produce no change, and it is a mistake to suppose that a power to sue, necessarily implies a liability to be sued.

COLLIER, C. J.—It is said by Blackstone, that if a person die wholly intestate, general letters of administration must be granted by the ordinary to such administrator as the statutes of Edward the third and Henry the eighth direct. The learned commentator then states to whom these statutes require the administration to be committed, and concludes, that "in defect of all these, the ordinary may commit administration (as he might have done before the statute of Edward III,) to such discreet person as he approves of; or he may grant him letters ad colligendum bona defuncti, which neither makes him executor nor administrator ; his only business being, to keep the goods in his safe custody, and to do other acts for the benefit of such as are entitled to the property of the deceased. 2 Bla. Com. 504-5. Stephens lays

down the law in equivalent terms.    2 Step. Com. 239 to 241.    Both of these authors cite 2 Inst. 398, and Manning v. Napp, 3 Salk. Rep. 37.

Chancellor Kent says, if no one offers for the administration, the surrogate must appoint a mere trustee *ad colligendum*, to collect and keep safe the effects of the intestate; and this last special appointment gives no power to sell any part of the goods, not even perishable articles; nor can the surrogate confer upon him that power.    2 Kent's Com. 414. This author cites 1 Rolle's Ab. tit. Exr. ch. 1; 2 Shep. T. 488, Preston's ed.

Toller thus expresses himself, "The ordinary, in default of persons entitled to the administration, may grant letters *ad colligendum bona defuncti*, and thereby take the goods into his own hands, and thus assume the office of an executor or administrator in respect to the collecting of them; but the grantee of such letters cannot sell the effects without making himself an executor *de son tort*.    The ordinary has no such authority, and therefore he cannot confer it on another."— Toll. on Ex'rs, 106. See also, 4 Burns' Eccl. L. 241; Wentw. Off. Exr. 174-5.

Viner, after stating to whom the administration of an intestate's estate should be granted, says, that "the ordinary may *ex officio* grant to a stranger *letters ad colligendum bona defuncti*, to gather up the goods of the deceased, or the ordinary may take them into his own hands to pay the debts of the deceased, in such order as an executor or administrator ought to pay them; but he, or the stranger who has letters *ad colligendum*, cannot sell them without making themselves executors of their own wrong.    The ordinary has only an authority, and no such power himself, and therefore he cannot give that power to any other."    11 Vin. Ab. 86-7.

Williams and Lomax, in their treatises on the Law of Executors, state the law in conformity to Blackstone, and the other authors we have cited.    1 Wms. on Ex. 148, 265, *et seq.;* 1 Lomax's Ex'rs, 145.

In treating of an administration by the common law, and of the powers and duties of the administrator, Comyn says: "But the ordinary, or his committee by writ *ad colligendum bona defuncti*, had only the power of an administrator *du-*

*rante minore aetate;* and therefore could only administer *ad commodum* of the intestate, and not to his prejudice. And could not give goods, or release debts, &c. Nor have an action for the recovery of his goods." To sustain the first proposition, 2 Just. 398 alone is cited. But the learned author is not quite consistent with himself on this point, and certainly does not observe his usual accuracy; for in another place he says: "An administrator during the minority of one entitled to the administration has, for the time, all the power and authority of an absolute administrator. So, if a man appoint an infant his executor, and that another shall have the administration during his nonage, he is his executor for the time, and so long has the authority of an absolute administrator or executor." 1 Com. Dig. tit. Administration F. and tit. Administrator A.

Upon reference to the Institutes, we think the proposition of Chief Baron Comyns is not supported. After noticing the power of the ordinary over the goods which come to his hands upon the death of an intestate, the author of the Institutes proceeds thus: "If it be demanded what interest the ordinary hath in the goods of the intestate which come to his hands; it is answered that he had such an interest as the administrator to whom administration is committed *durante minore aetate . executoris ad opus commodum et utilitatem ipsius executoris, et non aliter seu alio modo.* So as the ordinary may administer for the good of the intestate, but cannot give the goods of the intestate, or do any thing to his prejudice." 2 Inst. 398.

Special administrations have been granted by the ordinary, limited to the collection of all the personal property of the deceased, and giving discharges for all the debts which were due to the intestate, on the payment of the same ; and doing what further might be necessary for the preservation of the property, "and to the safe keeping of the same, to abide the directions of the court." In the goods of Radnell, 2 Addis. Rep. 232. According to the English law, special administrations were limited or expanded in the powers they conferred, according as convenience, or a sense of duty dictated ; but were frequently restricted "to the mere collection and preservation of the goods." Wynn v. Wynn, 8 Leigh's R.

264.   In the latter case, the administrator is not liable to be sued for a debt of the intestate, and if a judgment has been rendered against him upon such a liability, and administration be afterwards granted, a *scire facias* will not lie against the successor to revive; but he may be sued *de novo*. Wynn v. Wynn, *supra*.

From this hasty notice of the authorities, we think it abundantly obvious that an administrator, with power merely *to collect and preserve the estate of the deceased*, is not vested with authority to pay debts, nor can he be sued upon any undertaking of the deceased. Although the ordinary in England, since the statute of Edward, may be chargable with the debts of an intestate, if he keeps or disposes of the estate. Yet it by no means follows, that the liability of one to whom he has committed a limited power over the estate is equally extensive. The authority of the committee of the ordinary must, in the nature of things, depend upon the grant, and will be more or less extensive according as the terms of this are broader or more restricted. These conclusions are so clearly deducible, that it is needless to illustrate them further.

By our statute of 1810, it is enacted that "the judge of the orphans' court, whenever he may deem it necessary, may appoint an administrator or administrators to collect the goods of the deceased; and in case the administrator or administrators so appointed, shall commence a suit or suits, the same shall not abate by the appointment of an administrator or administrators in chief, but the suit or suits may progress for the use of the administrator or administrators in chief." Clay's Dig. § 8, 222.   This is perfectly plain, and shows that the special administrator contemplated, is only authorized "to collect the goods of the deceased," by such legal means as are appropriate—with or without suit.   That he may sue is indicated by the provision made for the revival of suits in the name of his successor, and the failure to make a corresponding provision for reviving suits in which he is the defendant, furnishes a strong argument, if the act were otherwise doubtful, that no action could be brought against him in his representative character.   See Flora v. Mennice, 12 Ala. Rep. 836.

40

From this view, the conclusion is but a natural sequence, that an administrator *ad colligendum* is not authorized to pay the debts of the deceased, and therefore there is no reason why they should be presented to him to save the bar of the statute of non-claim. Such an administrator does not come within the spirit and meaning of the act, even if he is within the letter.

The act of December, 1841, provides "that all notes, bills, bonds, or other evidences of debt held by the State Bank, or Branch Banks, payable to the cashier, or the person who has filled the office of cashier of said bank, or branch bank, may be sued and collected in the name of the several banks, in the same manner as if they had been made payable directly to the said bank or branch bank by which the paper has been taken and discounted," &c. *Further,* "the legal title to such paper, for all purposes of suit or collection, shall be deemed to have been in said bank or branch bank by whom the paper was discounted."

In Crawford et al. v. The Branch Bank at Mobile, 7 Ala. Rep. 383, it was held, that the description of the note in a proceeding commenced by the bank by notice, as payable to B. G., cashier, shows *prima facie* that the legal title was in the bank. Here, the declaration alledges the making and delivery of the note to the plaintiff, payable to "B. Gayle, cashier, or bearer." In consideration thereof, the defendant's intestate promised the plaintiff to pay the sum in the note specified, *&c.*

This, we think, is sufficient upon demurrer, to show that the plaintiff, in virtue of the statute, was entitled to maintain the action. The consequence is, the judgment must be affirmed.