## PARK v. BAXTER et al.

No. 24991.   Jan. 26, 1937.

Dudley B. Madden and Walter Hubbell, for plaintiff in error.

H. B. Lockett, for defendants in error.

BAYLESS, V. C. J.   Eva Baxter et al., heirs of William Park, deceased, sued Joe Park (their brother and coheir), executor of the last will and testament of William Park, deceased.   Joe Park appeals from a judgment in their favor.

The facts submitted to the trial court established the following:   William Park died seized of a one-half interest in certain real property in Sulphur, Okla., and at the time of his death there was pending an action to partition the property.   He died testate, survived by his widow and several children. His son Joe was named executor of his will and duly entered upon the probate thereof and the administration of the estate.   Joe had himself substituted as a party to the partition proceedings, in lieu of his father. The partition commissioners reported the property not partible, recommended the sale

thereof, and appraised its value at $6,000. Joe made an effort to buy the property for the benefit of the estate (section 760, O. S. 1931) by submitting an offer therefor, but on objection by the other party the trial judge rejected the offer and ordered a public sale of the property. Joe then secured the aid of third persons and at the public sale bid the property in for himself for $7,500, paid the other party and charged his account as executor with $3,750, or one-half of the sale price to the benefit of the estate. Joe then repaired the buildings, operated the hotel a short time, and sold it for $18,000, $9,000 in cash and $9,000 in notes. The will of his father directed that the estate be applied to the support of the widow, and at her death be distributed as directed. William Park died in 1926. In 1928, Joe Park filed his final account as executor, and when it was allowed, he thereafter held the money of the decedent and applied it to the support of the widow until her death in 1931. When he attempted to pay the heirs the money, they rejected the offer, contending that he had no lawful right to buy the real property and that he held as their trustee and should account on the basis of the $18,000 sale price rather than the $7,500 partition sale price. The heirs further contend that the county court had no authority to entertain and act upon the final account, since by the terms of the will no distribution was to be made until the death of the widow.

The plaintiffs' cause of action against Joe is based upon two theories: (1) His legal incapacity to purchase at the partition sale, and (2) the void character of the order of the county court approving the final account and discharging the executor. These points are assertedly tainted by fraud as well as their illegality.

We have examined the record, and there is a complete absence of any evidence reasonably susceptible of a fraudulent intent or act on Joe's part. Therefore, these asserted illegal actions remain for consideration, freed of the aspect of fraud.

Issues were joined in the trial court upon the legal right of Joe to purchase at the partition sale, although the estate which he was administering was a part owner of the property being sold in partition. However, there is no occasion to consider this issue on appeal, for from the record and briefs it is clear that Joe has abandoned any such position, and now appears voluntarily, as a trustee for those who were heirs and devisees of his father.

The order of the county court aforesaid is not void. The county court had jurisdiction of the subject matter (the probate of the will) and jurisdiction of the persons (the heirs), for all purposes legitimately appurtenant to the administration of the estate. This included the interpretation of the will. Armstrong v. Letty, 85 Okla. 205, 209 P. 168. The fact that the will could be construed to postpone distribution during the life of the widow would not be sufficient to oust the county court of its power to settle accounts, determine heirship, and order a distribution according to the scheme of payments set up in the will. The county courts of this state control executors, and a testator may not imperiously impose his desires upon such a court. This will was just as susceptible of meaning that Joe should pay the widow such payments during the pendency of the probate proceedings, as executor, and as trustee thereafter. The county court so determined, and its order is final and conclusive in this respect. However, a county court in this state exercising its probate jurisdiction has no power to administer trusts, lacking equitable jurisdiction. Therefore, it was entirely proper for the county court to close the probate proceedings and leave Joe to the administration of the trust created. Its order was not void.

The discussion of the issues of law heretofore indulged has been necessitated by the abandonment by Joe of his position as sole owner of the property, and the voluntary assumption of the position of trustee for the benefit of the estate of the title to one-half thereof. We have been forced to thus discuss the facts and law in an effort to ascertain whether Joe is a trustee by operation of law, in good faith or in bad faith. From these considerations we have concluded that the trial court erred in finding him guilty of bad faith. Such finding is against the clear weight of the evidence, and was induced more by erroneous legal considerations, as heretofore demonstrated, than by the actual weight of the evidence. The figures included in the final account were based upon a position legally correct, but since abandoned. Whether such figures were actually erroneous is a closed matter because the county court by its judgment approved them, and no legal attack thereon has been made since. Our power to use other figures in the accounting herein arises only by virtue of the voluntary change on the part of Joe.

Since Joe admits his trusteeship, and we have found it not to be in bad faith, we must reverse the judgment of the trial court

in so far as the accounting and monetary judgment is concerned. The trial court's accounting is punitive, and cannot be approved.

It is certain from the evidence that the building on this property was in a state of dilapidation, and of very little use or value. The repairs made were necessary and enhanced the use and value of the building, and are not attacked as unreasonable. There was no furniture in the building at the time of purchase, and all of the furniture placed therein was Joe's. There were unpaid taxes, which were a lien. It is undisputed that Joe paid $3,750 at the partition sale. Joe paid his mother $633.95 before the final settlement, and $760.48 between the final settlement and her death. He is entitled to credit for both sums. The trial court erred in refusing him credit for payments actually made during the latter period. Joe also made expenditures for attorneys' services, abstracts, interest on the money borrowed to carry through the purchase and otherwise, totaling $1,838.94, which are not attacked as unreasonable, and, therefore, must be allowed.

The cause is remanded, with directions to ascertain the amount of principal using $18,000 as a base, and interest thereon arising from the sale of the property, and to charge Joe therewith. Joe shall be credited with the cost of the furniture, $903.13; the taxes paid, $2,782.59; the expense of repairs, $2,705.36; the attorneys' fees, etc., $1,838.94, which includes interest on the money borrowed by Joe to purchase the property and which sum shall be increased by adding the interest accruing to the date of judgment hereunder on all items except the money paid to the widow; the sale price of the other half of the property, $3,750, and the total payments made to his mother, the widow, $1,374.43. Joe shall also be charged with any profit made from the operation of the hotel, but allowed compensation for his services from the time he purchased until he sold. It will be seen that we are charging interest on the $18,000 against Joe, but are crediting him with interest on those expenditures made on or about the property.

We cannot say from a reading of the judgment or Joe's brief whether it was intended to treat Joe as the owner of the half purchased from the other party, and as trustee only as to the half purchased which belonged to the estate. His legal incapacity, if any, applied to all. Since this matter makes vital differences in the allowances in the accounting, we are treating his abandonment of the purchase on an individual and personal basis and the assumption of a trustee's status as applying to the entire property.

Another thing we desire to call to the trial court's attention is its apparent attempt to distribute to certain heirs only the entire amount found to be due from Joe, to the exclusion of certain others. When the amount due is ascertained, there shall be deducted therefrom $1,000 which shall be divided between the legatees specified in the will and order of the county court, and the remainder shall be divided into 10 equal parts, and those appearing in this action and prosecuting their claims shall receive only their legacies. If Joe has settled and received acquittance from any legatee, he shall be entitled to satisfaction of judgment therefor. If he has not, such others will have their claims against him. Their silence does not give those who are active their shares also.

The costs of the action and appeal are assessed against the trust fund.

OSBORN, C. J., and BUSBY, GIBSON, and HURST, JJ., concur.