8 So.2d 855

### Ex parte KELLY.

### KELLY v. BURNS.

### 6 Div. 997; 6 Div. 9.

Supreme Court of Alabama.

April 23, 1942.

Rehearing Denied June 30, 1942.

Horace C. Wilkinson, of Birmingham, for petitioner.

Harris Burns, of Birmingham, for respondent.

BROWN, Justice.

We are not of opinion that Act No. 633, approved July 10th, 1940, conferring on "the Probate Courts in all counties of this State which now have or may hereafter have a population of 400,000 or more, according to the last or any subsequent Federal census * * * general equity jurisdiction concurrent with that of the Circuit Courts, in equity * * * in the administration of the estates of deceased persons, minors and insane persons, including testamentary trust estates" is unconstitutional. Act No. 633, approved July 10, 1940, Acts 1939, p. 1000 and 1001. See supplement to Code of 1940, Title 62, § 181 (1) miscellaneous laws applicable to Jefferson County.

In the enactment of this statute the legislature was well within its plenary powers. Constitution of 1901, § 139. As observed by this court, speaking through Brickell, Chief Justice, in State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89, 90, the clause "and such persons as may be by law invested with powers of a judicial nature" was introduced into the Constitution to insure the right of the General Assembly to confer powers essentially of a judi-

cial nature on other than judicial officers. This clause first appeared in the Constitution of 1868, and was carried into the Constitution of 1875 as Art. IV, § 11, and since the decision in State ex rel. Winter v. Sayre, supra, has been readopted in the Constitution of 1901, with its interpretation in the Winter case supra, and this interpretation has been repeatedly reaffirmed in many cases since. Notably, State ex rel. Ham v. Brock, Clerk, 180 Ala. 505, 61 So. 646; State ex rel. Vandiver v. Burke, Judge, 175 Ala. 561, 57 So. 870; Ex parte Pruitt, 207 Ala. 261, 92 So. 426; In re Opinions of Justices, 209 Ala. 593, 96 So. 487.

The scope of the equity jurisdiction conferred is not as broad as that of the circuit court, but is full jurisdiction to determine, in general, every equitable question arising in connection with decedents' and wards' estates, so far as the question concerns any person before the court by reason of any right in, or obligation to, such estates or trusts. 21 Corpus Juris Secundum, Courts, § 302, p. 544.

In Rensford v. Joseph A. Magnus & Co., 150 Ala. 288, 43 So. 853, it was observed: "The jurisdiction of the chancery court over the administration and settlement of estates of deceased persons is original and general. (Citing authorities.) * * * Moreover, this doctrine of the concurrent jurisdiction of the chancery court with the probate court in the administration of estates is recognized in the Constitution of 1901 of this state. Section 149. * * * " 'The chancery court retains its original jurisdiction over the subject of administration, and may be appealed to by any interested party, other than the personal representative, without the assignment of any special reason, at any time before the concurrent jurisdiction of the probate court has attached by the institution in that court of proceedings having substantially the same object. If such proceedings have commenced in the probate court, or if the power of the chancery court be invoked by the personal representative, then some special equitable reason must be assigned to give the chancery court jurisdiction.' * * *." (Parenthesis supplied.)

This rule in so far as it required the assignment of equitable ground for removal by the personal representative has been modified by statute. Code 1940, T. 13, § 139.

We are further of opinion that when the petition for the appointment of an administrator was filed in the probate court, and that court assumed jurisdiction, appointing the administrator, this constituted it a pending administration subject to removal to the court of equity, notwithstanding there was an appeal from the order of the probate court appointing the administrator. The effect of the removal and appeal was to give the circuit court jurisdiction of the entire proceeding. Constitution of 1901, § 149.

The effect of the decree appealed from—remanding the administration of the estate to the probate court—was to put this branch of the case out of the circuit court, and was such final decree as will support the appeal. Bailey v. Southern Railway Co., 215 Ala. 677, 112 So. 203. That decree was laid in error and must be reversed.

The petition for writ of prohibition is granted, restraining the probate court from further proceeding in respect to the cancellation of the lease. The merit of that proceeding is a matter for consideration of the circuit court.

Writ of prohibition granted.

Reversed and remanded.

GARDNER, C. J., and BOULDIN, FOSTER, and LIVINGSTON, JJ., concur.

THOMAS, J., dissents as indicated in his opinion which follows.

KNIGHT, J., not participating.

THOMAS, Justice (dissenting in part as indicated).

The petition and answer present for decision three important questions. (1) Is the act purporting to confer "general jurisdiction" concurrent with that of the circuit courts in equity of this state in the administration of estates of deceased persons, minors and insane persons, including testamentary trusts, unconstitutional? Acts 1939, p. 1000, now codified as Article 18, Subdivision 3A, § 181(1) et seq., T. 62, Alabama Code of 1940. (2) If constitutional, can the probate court exercise its equity jurisdiction in the administration of the estates of deceased persons *in advance of the appointment of an administrator in chief,* that appointment being held in abeyance by appeal to the cir-

cuit court? If the probate court can exercise its jurisdiction in the administration of estates of deceased persons in advance of the appointment of an administrator in chief, *is an administrator ad colligendum authorized to file a petition in equity in the probate court to annul a lease made by the decedent and obtain possession of the real estate described in the lease?* (3) If the probate court is authorized to receive and act on a petition by the administrator ad colligendum to annul a lease made by the decedent and to obtain possession of the real estate described in the lease, *does the fact that its equity jurisdiction was first invoked by a petition of said kind prevent the removal of the entire matter to the circuit court, in equity,* at the instance of E. E. Kelly, petitioner for prohibition, the brother of decedent, filing application in probate for letters of administration of said estate, and appellant in the case styled 6 Div. 9?

The foregoing important questions are presented by the undisputed facts now to be recited. The petition and answer of the respondent show that on, to-wit, the 27th day of August, 1941, Lawrence Kelly died. Mrs. L. L. Kelly, his alleged common law wife applied for letters of administration on September 2, 1941, in the Probate Court of Jefferson County, Alabama. On the 3rd day of September, 1941, the petitioner E. E. Kelly, brother of deceased, filed application in the same court for letters of administration on the estate of the said Lawrence Kelly. These petitions came on to be heard on the 9th day of October, 1941. At the conclusion of the hearing letters of administration were ordered issued to the common law wife. It was provided in the order that the letters should not issue until after thirty days from the date of the order. On the 3rd day of November, 1941, E. E. Kelly took an appeal from said order, and that appeal is now pending in the Circuit Court of Jefferson County, and undisposed of at this time.

On the 17th day of January, 1942, the Honorable Eugene H. Hawkins, as Probate Judge of Jefferson County, appointed Harris Burns as special administrator ad colligendum of the estate of Lawrence Kelly, deceased, and he is now serving in that capacity. On the 11th day of February, 1942, the special administrator ad colligendum filed a petition in the Probate Court of Jefferson County, in Equity, in which it was recited that the deceased owned three parcels of real estate in Jefferson County which are designated as Parcel One, Parcel Two and Parcel Three in the petition. Parcel One is known as the Hollywood Hotel Cottages; Parcel Two is known as the Birmingham Tourist Court; and Parcel Three, while not so identified in the petition, for convenience, will be referred to as the filling station property.

The petition recites that Lawrence Kelly executed a mortgage on a part of the Birmingham Tourist Court property on Aug. 1, 1941, to Steiner Brothers to secure an indebtedness of $9,000, which mortgage is recorded in Vol. 3219, p. 44, in the Office of the Probate Judge of Jefferson County. The petition recites that Lawrence Kelly executed a mortgage to R. C. Norris on the Hollywood Hotel Cottages property dated Jan. 17, 1936, and recorded in Vol. 2227, p. 184, in the Office of the Probate Judge of Jefferson County, securing an indebtedness of $5,000, payable in monthly installments, and that this mortgage was foreclosed on Nov. 14, 1941, and the property purchased by the mortgagee for the sum of $2,038.48, which was the amount of the unpaid balance of the mortgage indebtedness. It is averred that the mortgagee subsequently conveyed that property to E. E. Kelly for $100, and that Kelly then executed and delivered a purchase money mortgage to the mortgagee to secure the balance of the unpaid purchase price amounting to $1,979.68.

The petition further recites that the Birmingham Tourist Court property and the Hollywood Hotel Cottages were leased by Lawrence Kelly to E. E. Kelly for a term of ten years from the 1st day of March, 1937, to the 1st day of March, 1947, at a monthly rental of $50, and that it is provided in the lease that in event the lessee fails to pay the rents as they become due the lessor has the right at his option to re-enter the premises and annul the lease.

The petition recites that the special administrator ad colligendum made demand on E. E. Kelly for the rent provided for in the lease and that Kelly refused to pay the rent, "claiming that since the death of said Lawrence Kelly he has paid out more money than the amount of said rent and that it will take two or three years for the amount of said rent to be sufficient to reimburse him for the money that he has paid out since the death of said Lawrence Kelly, deceased. And further stating that the said Lawrence Kelly was indebted

to E. E. Kelly at the time of his death in the sum of $25,000.00 or more." The petition filed makes it clear that the indebtedness of Lawrence Kelly mentioned in the petition filed by the administrator ad colligendum was owed by Lawrence Kelly to E. E. Kelly at the time of his death and that E. E. Kelly has equitable liens and claims against the property described in the petition that far exceed any sum that it might be claimed E. E. Kelly is obligated to pay as rent.

The prayer for the writ of prohibition was to the effect that the Hon. Eugene H. Hawkins, be prohibited from hearing, or making any further orders on the petition filed in the probate court by Harris Burns, as special administrator ad colligendum of said estate, on whose petition, it is prayed, that E. E. Kelly be required to answer why the lease referred to in said petition should not be declared null and terminated, and why he should not be required to deliver possession of the property in question to the special administrator.

On the 13th of February, 1942, E. E. Kelly filed a petition in the Circuit Court of the Tenth Judicial Circuit of Alabama, in Equity, praying for a removal of the administration of the estate of Lawrence Kelly, deceased, to the circuit court, in equity, and on said date Hon. E. M. Creel, Circuit Judge, sitting in Equity, entered a decree removing the administration of the estate of Lawrence Kelly, deceased, from the Probate Court of Jefferson County to the Circuit Court of the Tenth Judicial Circuit of Alabama, in Equity, and ordering the Probate Judge to deliver all papers in the case to the Register of the Circuit Court.

On the 16th day of February, 1942, on motion of the administrator ad colligendum, Judge Creel made an order revoking the order removing the administration of the estate of Lawrence Kelly, deceased, from the Probate Court to the Circuit Court, in Equity, and remanded the administration of said estate to the Probate Court.

Counsel for petitioner say that it was the theory of the administrator ad colligendum, which was concurred in by Judge Creel, that no regular or general administrator had been appointed, and that the appointment of a regular or general administrator was in litigation and was then on appeal from the probate court to the circuit court and that the administration of the estate could not be removed from the probate court to the circuit court in equity in advance of the appointment of a general administrator or administrator-in-chief, and for that reason the order removing the administration of the estate to the circuit court in equity was erroneous.

It was further insisted that the Probate Court of Jefferson County was clothed with equity jurisdiction and that its equity jurisdiction had been invoked prior to the filing of the petition to remove the administration of the estate of Lawrence Kelly, deceased, from the probate court to the circuit court, in equity, and that the alleged equity jurisdiction of the probate court was concurrent with the equity jurisdiction of the circuit court, and that since the equity jurisdiction of the probate court was invoked first, the circuit court in equity did not take jurisdiction of the matter of the administration of said estate.

The Act of 1939, p. 1000, is codified as Art. 18, Subdivision 3A, § 181(1), T. 62, Alabama Code of 1940. The pertinent provisions, among others, are:

"§ 181(1). Probate court to have equity jurisdiction in administration of estates.— The probate court in the county shall have general equity jurisdiction concurrent with that of the circuit courts, in equity, of this state, in the administration of the estates of deceased persons, minors and insane persons, including testamentary trust estates. (1939, No. 633, § 1, appvd. July 10, 1940.)

"As passed by the legislature, the act herein codified was stated to be applicable to 'all counties of this State, which now have or may hereafter have a population of 400,000 or more.' In fact, the application of this act is therefore limited to Jefferson county alone.—Ed. note."

And the seventh subsection of the above act, reads: "§ 181(7). Equity jurisdiction of probate court cumulative.—The jurisdiction conferred by this subdivision on the probate court and probate judge of the county is intended to be cumulative only, and it is not intended hereby to in any manner limit or restrict the present jurisdiction of the circuit court or the probate court of the county. Nothing herein shall be construed as prohibiting the removal of any such estates from the probate court in the county to the circuit court in equity, as is now provided by law. (1939, No. 633, § 7, appvd. July 10, 1940.)"

The real question is whether the legislature may constitutionally confer general equity jurisdiction concurrent with that of the circuit courts, in equity in the administration of the estates of deceased persons, minors and insane persons, including testamentary trust estates on the probate courts in this state. Is there any expressed or implied prohibition in the Constitution of the State so forbidding? What did the framers of our Constitution intend as to this important matter, touching such vital affairs of the several classes of individuals as to their rights, properties and estates?

We will here advert to the several provisions of the Constitution which require that certain judges in courts of record, special judges (in such matters or courts), exercising jurisdiction over trust properties and estates, be learned in the law.

Section 154 of the Constitution of 1901, Article VI [Skinner's Alabama Constitution Annotated p. 610] provides: "The chancellors and judges of all courts of record shall have been citizens of the United States and of this state for five years next preceding their election or appointment, and shall be not less than twenty-five years of age, *and, except judges of probate courts, shall be learned in the law."* (Italics supplied.)

This exception as to judges of probate was explained by Governor Oates and Mr. Duke to the Constitutional Convention of 1901, and it was urged that such exception should be included in the above section because the jurisdiction of probate judges was "domestic in character" and "particularly an office of the people." See Debates on this proposed amendment in Official Proceedings, Constitutional Convention of 1901, Vol. III, pp. 3502–3518.

Section 171 was added by Mr. Pillans, without debate, as a precaution to meet any changes in courts that may be made under the new and amended sections of Article VI, pertaining to the judicial system of the state, Constitution of 1901.

It is provided in Section 160 (Skinner's Constitution Annotated, p. 619), that if in any case a judge or chancellor shall be incompetent to try and render judgment in such case, the parties may agree upon some disinterested person practicing in the court, *learned in the law,* to act as special judge or chancellor and to hear and render judgment in the same manner as such incompetent chancellor or judge could have but

for incompetency; and further provides that the legislature may prescribe other methods for supplying special judges.

It is noted that the provision for the appointment of the special judge by agreement of the "parties, or their attorneys of record" or by the register in chancery or the clerk of such circuit or other courts in which said cause is pending, requires the appointment of a disinterested person, practicing in that court, who shall be "learned in the law." The provision that the legislature *may prescribe other methods for supplying special judges* is not within the purview of the statute approved July 10, 1940, and carried into the Pocket Edition of the 1940 Code, above set out.

The provisions of §§ 154 and 160 are new to the Constitution of 1875, Art. VI, § 14; Art. VI, § 18. The makers of the Constitution intended and thus guaranteed to litigants in equity that their questions would be heard by judges or chancellors *learned in the law,* as they did with litigants in common law actions. The exception as to probate judges, contained in Section 154 of the Constitution (not requiring them to be learned in the law) was not made to embrace a situation covered by the foregoing statute, but for the obvious necessities of such case, with the right of removal, in a proper matter, to a court of equity. This view is supported by the last sentence of Section 160 of the Constitution, limiting the right of the legislature to "prescribe other methods for supplying special judges in such cases," and only leaving open to the legislature the *"other methods"* for supplying special judges, with the required qualifications indicated in the fundamental law.

Section 149 of the Constitution (Skinner's Alabama Constitution Annotated, p. 601) declaring the right of the legislature to establish in each county a court of probate, with general jurisdiction of orphan's business and with power to grant letters testamentary and administration, provides further, "that whenever any court having equity powers has taken jurisdiction of the settlement of any estate, it shall have power to do all things necessary for the settlement of such estate, including the appointment and removal of administrators, executors, guardians, and trustees and including action upon the resignation of either of them." This provision of the organic law cannot be rendered nugatory or circumvented by an act

conferring equity jurisdiction on a court whose powers in the main are defined by the Constitution itself. If it were the purpose of the Constitution makers to accord such right and powers sought to be embraced by the act in question, what was the reason for incorporating Section 139 in the Constitution, defining the judicial power of the state and declaring that the same is vested in the Senate sitting as a court of impeachment, a supreme court, circuit courts, chancery courts, courts of probate, such courts of law and equity inferior to the supreme court, and such persons as may be by law invested with powers of a judicial nature, but no court of general jurisdiction "at law or in equity, or both," shall thereafter "be established in and for any one county having a population of less than twenty thousand, according to the next preceding federal census, and property assessed for taxation at a less valuation than three million five hundred thousand dollars."

Section 143 of the Constitution declares the jurisdiction of such courts. Section 144 declares when the judges of the several circuit courts shall hold court in each county and provides for the exchange of circuit judges. Section 145 provides for the establishment by the legislature of a court or courts of chancery, with original and appellate jurisdiction, except as otherwise authorized in the article, and that the state shall be divided into convenient chancery divisions and for chancellors residing in the division as shall be elected or appointed, etc.

Section 146 provides that a chancery, or a court having the jurisdiction of a chancery court, shall be held in each district at a place fixed by law at least twice a year and that chancellors may hold court for each other when they deem it necessary and shall do so when directed by law.

It is provided by Section 147 that a county of certain population and wealth need not be included in any circuit or chancery court division, meaning that it can be a circuit in and for itself. Smith v. Stiles, 195 Ala. 107, 70 So. 905; Opinions of Justices, 217 Ala. 602, 117 So. 50.

The foregoing is the constitutional setting or context of Sections 145 to 149 of the Constitution herein elsewhere set out.

In Smith v. Stiles, Probate Judge, 195 Ala. 107, 70 So. 905, 907, it is said that Section 148 must be construed in pari materia with Section 171, which provides that the legislature should have power to abolish any court, except the Supreme Court and the Probate Court, whenever its jurisdiction and functions have been conferred upon some other court. These sections were considered, as indicated, in Smith v. Stiles, the court saying: " * * * Section 171 of the Constitution gives the Legislature the power to abolish any court, except the Supreme and probate courts, whenever its jurisdiction and functions have been conferred upon some other court. We do not think that it would require two separate and distinct laws to accomplish this result. We think the Legislature could by one law confer the jurisdiction of one court upon the other, and at the same time abolish the court which has been denuded of jurisdiction, as the doing of this would amount to the same thing as a consolidation under section 148 of the Constitution. We think that these two sections of the Constitution must be considered in pari materia, and that the former authorized a consolidation, while the latter was intended as a safeguard authorizing the abolition of a court when its jurisdiction was conferred upon another court * * *."

In Ex parte Pruitt, 207 Ala. 261, 262, 92 So. 426, 427, it was declared: "The Legislature has the unquestioned power to vest in inferior courts of statutory creation any of the powers or any portions of the jurisdiction of the chancery or circuit courts, to be exercised concurrently with those courts, if the latter are not completely and constitutionally supplanted. Const. 1901, §§ 148, 139, 171; State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89."

The makers of the Constitution of 1901 illustrated their intention in § 145, providing as follows: "The legislature shall have power to establish a court or courts of chancery, with original and appellate jurisdiction, except as otherwise authorized in this article. * * * *."

The makers of the Constitution of 1901' illustrated their intent in Section 146, requiring a chancery court or court with that jurisdiction to be held in each district twice a year and that chancellors may hold court for each other; in Section 147, by giving the right to omit from any circuit or chancery division any county or counties of the class indicated; and in Section 148 by giving power of consolidation and jurisdiction of both chancery and circuit courts. These sections immediately precede Section

149 dealing with the probate courts and their general jurisdiction with the new proviso hereinabove set out.

The addition of this proviso in § 149, new to the Constitution of 1901, was a material change in the Constitution of 1901. The changes and additions noted and in §§ 147 to 148, Constitution of 1901, were to meet the conditions and trend of legislation sustained in the case of Moore v. State, 68 Ala. 360, urged upon this court in oral argument and brief, and on which appellee and respondent rests his case.

It must be noted that the Act of 1878-79, p. 231, conferring concurrent jurisdiction with circuit court upon probate court was that which was sustained under the Constitution of 1875, which is changed.

The view we have indicated is further supported by the provisions of Section 148 of the Constitution, reading as follows: "The legislature may confer upon the circuit court or the chancery court the jurisdiction of both of said courts. In counties having two or more courts of record, the legislature may provide for the consolidation of all or any such courts of record, except the probate court, with or without separate divisions, and a sufficient number of judges for the transaction of the business of such consolidated court."

It is significant that this section does not provide that the legislature may confer upon the probate court the jurisdiction of the circuit or chancery courts, nor confer upon the two named courts the jurisdiction of the probate court.

In the Official Proceedings of the Constitutional Convention of 1901, Vol. II, p. 2304, Mr. Gregory L. Smith (one of the most outstanding lawyers of this generation in Alabama), who was Chairman of the Judiciary Committee of that Convention, upholds our view as to their departure from the Constitution of 1875 in this respect, and in accord with the foregoing opinion said in his report:

"No radical departure has been made from the judicial system of the State as established by the Constitution of 1875, but the Article has been so written as to give more elasticity to the judicial system of the State, so as to enable the Legislature to extend or modify the system, from time to time, as may be necessary to meet the needs of the State as its wealth and population increase, and to make a more economic and systematic arrangement of the system.

"The Article reported does not change the jurisdiction of the Supreme Court, nor create any other court of final resort, but makes it possible for the Legislature to create an Inferior Appellate Court, *to relieve the Supreme Court of any excess of labor that may be placed upon it,* should the increasing litigation of the State hereafter require it.

"The common law and chancery jurisdictions as separate and distinct systems are retained, and *no change whatever is made in the practice under these separate and distinct systems;* but the *Legislature is authorized to confer both jurisdictions upon the Circuit or Chancery Courts or upon such inferior courts as the Legislature may from time to time create,* so as to enable the Legislature, if it shall become necessary for the convenience of business, to provide for the holding of courts more frequently in the various counties of the State, with but little, if any, additional expense to the State.

"With the same view, the limitations upon the number of the circuit and chancery divisions into which the State is divided have been removed, and, in lieu thereof, it has been provided that no circuit or chancery division shall contain less than three counties, unless there be embraced therein a county having a population exceeding 20,000 and taxable property exceeding $3,500,000 in value, and that such counties need not be included in any circuit or chancery division unless the value of its taxable property or its population shall be reduced below such limits. In the opinion of the Committee it is probable that many of such counties will be able to maintain inferior courts with a common law and equity jurisdiction, and the purpose of the Committee is to enable the Legislature to give to such counties separate courts to attend to their business, when the litigation of such counties will justify it, and make such inferior courts take the place of both the Circuit and Chancery Courts in the counties in which they shall be established.

"The *system of Probate Courts,* and *their jurisdiction is left wholly unchanged;* but it is provided that whenever any court having equity powers has taken jurisdiction of the settlement of any estate, such court shall have the power to do all things necessary for the settlement of such estate, including the appointment and removal of administrators, executors, guardians, and trustees, and including action upon the

resignation of either of them." (Italics supplied.)

Adverting again to pertinent authorities by this court, it will be noted that in Rensford v. Joseph A. Magnus & Co., 150 Ala. 288, 43 So. 853, the doctrine of concurrent jurisdiction of the chancery court with the probate court in administration of such estates in question is recognized, but the doctrine of concurrent jurisdiction of the probate court with the chancery court is not recognized in said decision. Lynne v. Irwin, 226 Ala. 463, 147 So. 385; Carter v. Hutchens, 221 Ala. 370, 129 So. 8.

See Official Proceedings, Constitutional Convention of 1901, Vol. III, p. 3466, for debates on Sections 146 to 149 of Constitution, inclusive. The adoption of § 149 was from the Constitution of 1875 with the amendments, *not conferring additional jurisdiction on the court of* probate, but providing for the transfer and administration by a court of equity in the settlement of any estate, which was in accord with Sections 147 and 148.

It is said in the Rensford case, supra, as follows: "The jurisdiction of the chancery court over the administration and settlement of estates of deceased persons is original and general. Pharis v. Leachman, 20 Ala. 662; Dement v. Boggess [Adm'rs], 13 Ala. 140; Hill v. Armistead, 56 Ala. 118; Pratt v. Northam, Fed.Cas.No. 11,-376, 5 Mason 95; 3 Pom.Eq.Juris. 1127; 11 Am. & Eng.Ency.Law (2d Ed.) 1191. This original jurisdiction of the chancery court was not taken away or in any wise affected by the jurisdiction of the probate court. * * * Moreover, this doctrine of the concurrent jurisdiction of the chancery court with the probate court in the administration of estates is recognized in the Constitution of 1901 of this state. Section 149."

Adverting to legislative power under the Constitution of Alabama, Art. IV, § 44, that statement of organic law is the limitation of its powers. Constitutions are limitations upon legislative power. Aside from such limitations, the power of the legislature has no bounds and is as plenary as the British Parliament. Sheppard v. Dowling, Judge, 127 Ala. 1, 28 So. 791, 85 Am.St. Rep. 68. All things which the General Assembly is not forbidden to do by organic law, it has full competency to do. Sisk v. Cargile, 138 Ala. 164, 35 So. 114.

The best illustration the writer has been able to find is the opinion by Mr. Justice Miller in Ferris v. Higley, 20 Wall. 375-384, 87 U.S. 375, 22 L.Ed. 383. This case deals with the organic law and the implied limitations on legislative enactments thereunder. It follows:

"The act of Congress under which Utah was organized as a Territory provided for a Supreme Court, District Courts, Probate Courts, and justices of the peace, and distributed the judicial power among them.

"It gave to the Supreme and District Courts a general jurisdiction at common law and in chancery, and limited and defined the powers of the justices of the peace.

"It declared that the legislative power should extend to all rightful subjects of legislation not inconsistent with the Constitution of the United States or with the organic act.

"The act of the Territorial legislature conferring on the Probate Courts a general jurisdiction in civil and criminal cases, and both in chancery and at common law, is inconsistent with the organic act, and is, therefore, void.

\* \* \* \* \*

"It is a tempting subject to trace the history of the probate of wills and the administration of the personal estates of decedents, from the time it was held to be a matter of exclusive ecclesiastical prerogative, down to the present. It is sufficient to say that through it all, to the present hour, it has been the almost uniform rule among the people, who make the common-law of England the basis of their judicial system, to have a distinct tribunal for the establishment of wills and the administration of the estates of men dying either with or without wills. These tribunals have been variously called Prerogative Courts, Probate Courts, Surrogates, Orphans' Courts, etc. To the functions more directly appertaining to wills and the administration of estates, have occasionally been added the guardianship of infants and control of their property, the allotment of dower, and perhaps other powers related more or less to the same general subject. Such courts are not in their mode of proceeding governed by the rules of the common law. They are without juries and have no special system of pleading. They may or may not have clerks, sheriffs, or other analogous officers. They were not in England considered originally as courts of record; and have.

never, in either that country or this, been made courts of general jurisdiction, unless the attempt to do so in this case be successful.

\* \* \* \* \*

"The general history of our jurisprudence and the organic act itself are also to be considered, and any act of the Territorial legislature inconsistent with the latter must be held void. We are of opinion that the one which we have been considering is inconsistent with the general scope and spirit of that act in defining the courts of the Territory, and in the distribution of judicial power amongst them, inconsistent with the nature and purpose of a Probate Court as authorized by that act, and inconsistent with the clause which confers upon the Supreme Court and District Courts general jurisdiction in chancery as well as at common law. \* \* \* "

The question here presented is not that decided in Tillery v. Commercial National Bank of Anniston, 241 Ala. 653, 4 So.2d 125.

In 21 Corpus Juris Secundum, Courts, p. 542, § 302, many authorities are collected to the effect that while probate courts are not courts of general equity jurisdiction [Keith & Wilkinson v. Forsythe, 227 Ala. 555, 151 So. 60; Courson v. Tollison, 226 Ala. 530, 147 So. 635] having only such powers as are conferred by statutory and constitutional grant, yet in matters which fall within their jurisdiction they do possess many of the powers usually exercised by courts of equity, and are authorized to apply the rules and principles of equity and to proceed in many respects after the manner of courts of equity. Many authorities are there collected to the effect that under some statutes they have full jurisdiction to determine in general every equitable question arising in connection with decedent's and ward's estates, so far as the question concerns any person before the court by reason of any right in or obligation to such estate, probate courts have jurisdiction. The last stated principle has not been decided in this jurisdiction, but the holdings in New York, Illinois and Texas are to the contrary. The effect of the Oklahoma decision (Park v. Baxter, 179 Okl. 75, 64 P. 2d 721) is that although a court sitting in probate has no power to administer trusts, yet the fact that a trust is created by the will before the court does not deprive it of the power to perform its ordinary probate functions in respects to the testator's

wish. After being administered, the case may be ordered into the hands of a trustee, in accordance with the terms of the will, whereupon the parties may resort to a court of equity to administer the trust.

It is urged on this court that if the legislature has no power to consolidate the probate court with courts having equity jurisdiction, in the absence of power of consolidation, the identical jurisdiction of the circuit and chancery courts may not be conferred upon probate courts. This is the reason for Section 139 of the Constitution, providing for such consolidation and the formation of courts with concurrent jurisdiction with circuit and chancery courts. In State ex rel. Vandiver v. Burke, Judge, 175 Ala. 561, 57 So. 870, it was held that the probate judge could discharge the duties of the county courts though not learned in the law and the county court of Cullman was not a court of record.

In oral argument and that presented in brief by petitioner in prohibition and appeal, it was insisted that if equity jurisdiction can be constitutionally conferred on the probate court, what is to prevent the legislature from conferring common law jurisdiction on the probate court, and criminal jurisdiction on the probate court, and all other jurisdictions on the probate court?

The writer of this opinion holds that the act in question offends our organic law. The other justices (KNIGHT, J., not sitting) hold that the act in question offends no provision of the Constitution. The opinion per BROWN, J., states the majority view.

Thus we are concerned with whether or not there is merit in the question that the administration of the estate can be removed from the probate court to the circuit court in equity in advance of the appointment of a general administrator. The relevant portion of Code 1940, T. 13, § 139, follows: "The administration of any estate may be removed from the probate court to the circuit court, or court of like jurisdiction, *at any time* before a final settlement thereof, by any heir," etc. (Italics supplied.)

Whenever a petition is filed in the probate court for letters of administration on the estate of a decedent the administration of that estate is then in progress and may be removed to the circuit court in equity at any time. The term "administration" includes more than the mere collection of the

assets, the payment of debts and legacies and distribution to next of kin. Martin v. Ellerbe's Adm'r, 70 Ala. 326. There can be no administration of an estate in the probate court without a petition or application for appointment of an administrator. The filing of the petition is a part of the administration of the estate within the meaning of the statute. Code 1940, T. 13, § 139.

The administrator ad colligendum is in the position of making the insistence that the circuit court in equity revoke the order to remove the administration of the Lawrence Kelly estate from the probate to the circuit court in equity because there was no administration pending. This is on the theory that there was no administration pending within the meaning of the statute in advance of the appointment of a general administrator. Yet the administrator insists that there is enough administration pending in the probate court to enable that court to exercise the identical equity jurisdiction that he claims the circuit court in equity could not exercise.

This court has held that a removal of administration of an estate from the probate to the circuit court merely substitutes a new tribunal for a former one; the new tribunal carries on in the place of the former tribunal. Bynum v. Brewer, 217 Ala. 52, 114 So. 577; Little v. Burgess, 240 Ala. 552, 200 So. 566.

The appointment of a special administrator ad colligendum and his authority are regulated by statute. The Code of Alabama of 1940, T. 61, § 89, provides as follows: "The judge of probate may, in any contest respecting the validity of a will, or for the purpose of collecting the goods of a deceased, or in any other case in which it is necessary, appoint a special administrator, authorizing the collection and preservation by him of the goods of the deceased until letters testamentary or of administration have been duly issued."

That is to say, that the authority of the probate court, in the appointment of a special administrator, is fixed and limited by statute. It is only that the appointment is for special administrator for the *collection* and *preservation of the goods of the deceased, and not for the purpose of the administration of the estate.*

The Code of 1940, T. 61, § 90, defines the authority of a special administrator as follows: "Every such special administrator has authority to collect the goods and chattels of the estate, and debts of the de-

ceased, give receipts for moneys collected, satisfy liens and mortgages paid to him, and to secure and preserve such goods and chattels at such expense as may be deemed reasonable by the probate court; and for such purposes he may maintain suits as administrator."

There is no authority in this statute for the special administrator to take any steps whatever with regard to the interest of the decedent in real estate. He has no authority to revoke a lease made by the decedent as was sought to be done in this case.

It is established by this court in Arendale et al. v. Johnson et al., 206 Ala. 245, 89 So. 603, 604, that: "A temporary administrator, or an administrator ad colligendum, as he is usually called, 'is the mere agent, or officer of the court, to collect and preserve the goods of the deceased, until some one is clothed with authority to administer them.' Flora v. Mennice, 12 Ala. 836. In that case it was expressly held that he could be removed at any time. Other than this preliminary duty of collection and preservation, he has nothing to do with the administration of the estate, as contemplated by sections 2519 and 2520."

In Mitchell v. Parker, 227 Ala. 676, 151 So. 842, 843, the court said: "Special" administrators must find their authority in the law which governs his situation and in the orders of the probate court. "He is the agent or officer of the probate court. Flora v. Mennice, 12 Ala. 836. His authority as defined by section 5749, Code, is to collect and receive goods, chattels, and debts due the estate, secure and preserve them at such expense as may be deemed reasonable by the probate court. He has no authority to pay debts nor receive the presentation of claims. Erwin v. Branch Bank, 14 Ala. 307."

The authority of the special administrator being fixed by statute, the same can neither be restricted nor enlarged by the court appointing him. Underhill v. Mobile Fire Department Ins. Co., 67 Ala. 45, 50. The law fixes the duty of the special administrator after the appointment and not the judge who makes the appointment. Wolffe v. Eberlein, 74 Ala. 99, 107, 49 Am. Rep. 809. A special administrator cannot pay debts of the estate nor is he liable to suit on a contract of the decedent. Erwin v. Branch Bank, 14 Ala. 307. A general administrator's authority with reference to

196

land of the decedent is limited as indicated by the statute to the sale of land for the payment of debts, equitable division, etc., when duly invoked. Blount County Bank v. Barnes, 218 Ala. 230, 118 So. 460.

The special administrator is shown by the record in this case to have undertaken to assert authority that a general administrator does not possess as to leases made by decedent. The authorities say that a general administrator cannot assent to a rescission of a contract nor divest heirs of an interest in land. Matthews v. Dowling, 54 Ala. 202. It follows that if a general administrator cannot divest the interest of an heir in land (except as the statute indicates), he would have no authority to change that interest by revoking the leases entered into by decedent.

The legislature has wisely omitted the power of disposition on the special administrator with reference to any interest in real property owned by the decedent and leased by that owner. The law making agents knew that such interest in real property would not be jeopardized by waiting the time necessary to dispose of the primary question of who should be declared the personal representative of decedent and administer the estate and its landed interests within the terms of the statute.

Therefore, I have to dissent from the majority opinion on the constitutional question discussed in detail by the writer. I am in accord with the majority view as to the right of removal to the circuit court, and think there was error in transferring the cause back to the probate court. I am in accord with the right and duty of the circuit court to proceed with the transferred cause and under its broad powers to decide the respective issues presented for decision in the case.