Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————————

### SC-2023-0636

————————————————

**Ex parte Marion Kristen McLeroy, as personal representative of the Estate of Nella Ruth Braswell, deceased**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: The Humane Society of the United States**

**v.**

**Marion Kristen McLeroy)**

**(Jefferson Circuit Court: CV-23-902471)**

MITCHELL, Justice.[1]

Nella Ruth Braswell died in 2014, leaving behind 6 cats, 13 dogs, and an estate valued at over $2,000,000. In her will, Braswell provided for the continuing care of her animals until the last one died, with the remaining funds to be given to The Humane Society of the United States ("the Humane Society").

After Braswell died, the Jefferson Probate Court accepted her will and opened an estate in her name. In accordance with the terms of Braswell's will, the probate court appointed Marion Kristen McLeroy as the personal representative of the estate, and McLeroy began managing the estate's assets. At some point, the Humane Society became dissatisfied with McLeroy and had the estate proceeding removed from probate court to the Jefferson Circuit Court. McLeroy objected, but the circuit court refused to relinquish the case. McLeroy now petitions our Court for a writ of mandamus directing the circuit court to return the case to probate court. We grant the petition and issue the writ.

---

[1]This case was originally assigned to another Justice on this Court; it was reassigned to Justice Mitchell on March 1, 2024.

Facts and Procedural History

During their lifetimes, Braswell and her husband amassed over 200 acres in north Jefferson County. Their holdings included a bar and grill, a 10-unit apartment building, a flea market, a gun store, and a winery. But after Braswell's husband died, those businesses closed and the condition of the properties began to deteriorate.

A. Braswell's Will

Braswell executed a will about a year and a half before she died. Her will included gifts to several close friends and family members. Braswell also left much of her real estate to the Humane Society and designated it as the residuary beneficiary of her estate. But the most notable feature of Braswell's will was its creation of a trust ("the Animal Trust") to provide for the future care of her animals. Braswell stated in her will that she wanted her animals to continue living at her home until they died. To achieve that, she directed the Animal Trust to pay all expenses necessary for the animals' care. Those expenses included a salary for the animals' caregivers and the "taxes, insurance, and all expenses of maintaining" Braswell's home.

Braswell's will provided guidance about how the Animal Trust should be funded. Specifically, the will directed that Braswell's home (and the accompanying outbuildings) be placed in the Animal Trust, along with $100,000 from the cash in her estate. The will also authorized the personal representative of Braswell's estate to sell other estate assets to provide funding, subject to the condition that any "funds over and above the amount needed to fund the trust" should be paid to the Humane Society. Finally, the will stated that the Humane Society would receive any assets left in the Animal Trust once the last of Braswell's animals died.

### B. The Probate Court Opens Braswell's Estate

After Braswell died, McLeroy submitted Braswell's will to the probate court, which opened an estate and appointed McLeroy as the personal representative. Several months later, McLeroy returned to the probate court, seeking guidance about the Animal Trust and how to care for Braswell's animals because the trustee and caregivers named in Braswell's will had declined their appointments. The probate court appointed McLeroy and her husband cotrustees of the Animal Trust and directed her to fund the trust with $370,000 from Braswell's estate.

4

Additionally, the probate court directed McLeroy to sell some of the land Braswell had owned and remit the proceeds of those sales to the Humane Society. If McLeroy could not find a buyer for the land within a year, the probate court instructed, she was to give the land to the Humane Society.

The materials before this Court do not reveal all that occurred between the parties in the nine years after Braswell's death, but it appears that they initially had a working relationship. At the Humane Society's suggestion, McLeroy placed Braswell's animals in a local animal hospital because many of them were in poor health and Braswell's home needed significant repairs.[2] As Braswell's animals died off, McLeroy and the Humane Society also discussed the possibility of terminating the Animal Trust and transferring the trust assets to the Humane Society. Those discussions were ultimately fruitless, however, because they could not agree on how much money would be needed for the surviving animals.

McLeroy and the Humane Society also had occasional discussions about selling some of the land that she was managing, but no sales were ever completed. There is no indication in the materials before us that

---

[2]The animals eventually returned to the home, but the date of their return is unclear.

5

any land or other estate assets were ever distributed to the Humane Society.

### C. The Relationship Between McLeroy and the Humane Society Deteriorates

The parties reengaged in early 2023 when a new attorney began handling the matter for the Humane Society. After some initial discussions with McLeroy's attorney about the status of the estate, the Humane Society requested deeds to all the property Braswell had owned, as well as a formal accounting of both the estate and the Animal Trust. McLeroy's attorney responded by supplying some of the requested information, but she explained in an email that she was "preparing a final settlement for the estate and for the trust" and that additional information and documentation would be available "as soon as the petition for final settlement of the estate and the trust is completed."

Almost two months later -- before McLeroy filed her petition to settle the estate and close the Animal Trust -- the Humane Society asked the probate court to remove McLeroy as the personal representative of Braswell's estate. The Humane Society specifically argued that McLeroy had failed to properly manage the estate and had breached her fiduciary duties to both the estate and the Humane Society. See generally § 43-2-

6

290, Ala. Code 1975 (listing grounds for the removal of a personal representative).

That same day, the Humane Society filed a complaint against McLeroy and her husband in the circuit court, thereby initiating a new action. In its complaint, the Humane Society alleged that McLeroy and her husband had improperly concealed information about the administration of the Animal Trust, had allowed trust assets to go to waste, and had failed to distribute trust assets that were not needed by the trust. The Humane Society asked the circuit court to remove McLeroy and her husband as cotrustees of the Animal Trust and to direct their successor to distribute the trust assets that were no longer needed to care for Braswell's animals. The Humane Society also asked the circuit court to order McLeroy and her husband to reimburse the Animal Trust for any losses caused by their alleged breaches of their fiduciary duties. Notably, however, the Humane Society did not ask the circuit court to remove the estate proceeding from the probate court and consolidate the cases.

### D. McLeroy Petitions the Probate Court for Final Settlement

One month later, McLeroy petitioned the probate court to enter a final settlement of Braswell's estate. McLeroy stated in her petition that the estate held cash assets of $618,684 and real property worth an estimated $1,000,000; that all gifts made by Braswell in her will had been paid (except for what was owed to the Humane Society); and that all other estate matters had been settled in accordance with the terms of Braswell's will. McLeroy also stated that only one of Braswell's animals was still alive and that she and her husband were caring for it at their home. McLeroy therefore asked the probate court to award her a sum for the future care of that animal and to close the Animal Trust along with the estate. According to McLeroy, the only remaining issues of the estate and the Animal Trust involved attorney fees, any awards made as part of the final settlement, and finalizing the transfer of property and the estate's remaining assets to the Humane Society. Along with her petition, McLeroy included canceled checks showing that the gifts Braswell had made in her will had been paid and ledgers showing the income earned and expenses incurred by both the estate and the Animal Trust.

McLeroy later amended her petition to include a statement listing the names and contact information of Braswell's heirs. McLeroy then served those heirs and the other beneficiaries of Braswell's estate with notice that she had "filed her accounts, vouchers, evidence and statement for a final settlement." That notice also informed the heirs and beneficiaries that the probate court had set a date for the final-settlement hearing at which they could "appear and contest" her petition for final settlement if they had reason to do so.

### E. The Circuit Court Removes the Administration of Braswell's Estate from the Probate Court

Three days before the scheduled hearing, the Humane Society petitioned the circuit court to remove the administration of Braswell's estate under § 12-11-41, Ala. Code 1975. The circuit court granted the Humane Society's petition two days later and, on the Humane Society's motion, consolidated the estate proceeding with the pending circuit-court action seeking the removal of McLeroy and her husband as cotrustees of the Animal Trust.

McLeroy asked the circuit court to vacate its order removing the estate proceeding from the probate court. In doing so, she argued that the Humane Society had waited too long to seek removal because, she

said, final-settlement proceedings had already begun in the probate court at the time the Humane Society sought removal. After a hearing, the circuit court denied McLeroy's motion, stating that "the probate court's jurisdiction to act upon a petition for final settlement had not attached" at the time of removal.

McLeroy now petitions this Court for mandamus relief, asking us to issue a writ directing the circuit court to remand the estate proceeding to the probate court.

Standard of Review

A trial court's ruling on whether it has subject-matter jurisdiction over a case is reviewable by a petition for a writ of mandamus. Ex parte Marshall, 323 So. 3d 1188, 1195 (Ala. 2020). Because a challenge to a circuit court's removal of an estate proceeding under § 12-11-41 implicates that court's subject-matter jurisdiction, see Ex parte Berry, 999 So. 2d 883, 885 (Ala. 2008), mandamus review is available to McLeroy here. Whether a court lacks subject-matter jurisdiction is a question of law that we review de novo. Id.

## Analysis

McLeroy argues that the Humane Society's petition to remove the administration of Braswell's estate from the probate court to the circuit court came too late. According to her, the probate court had already begun final-settlement proceedings when the Humane Society sought removal, which gave that court exclusive jurisdiction over the estate proceeding. The Humane Society pushes back, arguing that final settlement was impossible when McLeroy filed her settlement petition because there were still outstanding matters to resolve, including the Humane Society's request to remove McLeroy as personal representative.

The Humane Society may be correct that there are outstanding issues to resolve before Braswell's estate can be settled. But that does not prevent the final-settlement process in probate court from going forward -- after all, the very purpose of that process is to identify and resolve any issues standing in the way of final settlement. And under our longstanding precedents, once a probate court begins that process, a circuit court no longer has any authority to divest the probate court of its exclusive jurisdiction over the estate proceeding. Accordingly, McLeroy is entitled to the mandamus relief she seeks.

A. Removal Under § 12-11-41

Section 12-11-41 provides that "[t]he administration of any estate may be removed from the probate court to the circuit court <u>at any time before a final settlement thereof</u> ...." (Emphasis added.) For over 100 years, this Court has applied a bright-line rule that, once the final-settlement process for an estate has begun in the probate court, the circuit court may no longer acquire jurisdiction over the administration of the estate under § 12-11-41 (or its predecessor statutes). <u>See, e.g.</u>, <u>Ex parte Clayton</u>, 514 So. 2d 1013, 1016 (Ala. 1987) (explaining that while the right of removal under § 12-11-41 is broad, that right is limited "once the probate court has taken steps toward a final settlement"). Neither of the parties before us have questioned this line of precedent or its view of the removal statute.

1. <u>Precedential Origins</u>

The rule limiting a party's right to remove an estate proceeding from a probate court to a circuit court has its origins in <u>Carpenter v. Carpenter</u>, 200 Ala. 96, 96, 75 So. 472, 472 (1917). In <u>Carpenter</u>, our Court rejected a party's attempt to remove the administration of an estate from the probate court to "the court of equity," explaining that no

12

statute authorized "the ouster of the jurisdiction of probate courts, where that court has actually entered upon the exercise of its jurisdiction in and for a final settlement of estates ...."  Id.  Seven years later, in Ex parte McLendon, 212 Ala. 403, 405, 102 So. 696, 698 (1924) ("McLendon I"), our Court specifically held that "[t]he words 'at any time before a final settlement,' found in the removal act, mean before proceedings for settlement begin, not before they are completed."  (Emphasis added.)

Later cases have uniformly applied § 12-11-41 in accordance with Carpenter and McLendon I.  Two of those cases -- Ex parte Terry, 957 So. 2d 455, 459 (Ala. 2006) ("Terry I"), and Ex parte Terry, 985 So. 2d 400, 404 (Ala. 2007) ("Terry II") -- are particularly illustrative of the law and proper procedures to follow in cases involving removal petitions filed under § 12-11-41.

### 2. The Application of § 12-11-41 in the Terry Cases

The Terry cases involved a dispute between a father and his two sons about the estate of their mother.  Terry II, 985 So. 2d at 401.  The father, who was the administrator of the mother's estate, petitioned the probate court for a final settlement of the estate and submitted "an accounting of assets and a statement of heirs."  Id.  The probate court

13

then scheduled a final-settlement hearing, at which the sons appeared and objected to the father's accounting. Id. Because of the sons' objection, the probate court declined to enter a final settlement, instead issuing an order "directing discovery, setting a date for trial, and identifying the issues for trial." Id. at 403.

After "the parties engaged in discovery and a series of motions, responses, and hearings," the father petitioned the circuit court to remove the administration of the mother's estate under § 12-11-41. Id. at 401. But the probate court entered an order purporting to deny the petition for removal -- which had been filed in the circuit court -- because, in the probate court's view, "final settlement of the administration of the estate had begun." Terry I, 957 So. 2d at 456. After the circuit court entered its own order denying the petition for removal, the father petitioned this Court for mandamus review. Id.

> ### a. The Terry I Court Identifies the Error of the Probate Court and Circuit Court But Denies the Father Mandamus Relief

The Terry I Court concluded that both the probate court and the circuit court had fumbled their handling of the case. The Court explained that § 12-11-41 does not require a party petitioning for removal to plead

14

facts establishing that the removal petition is timely; rather, the statute requires only the filing of a sworn petition reciting that the petitioner is an interested party as set forth by the statute and that, in the petitioner's view, "such estate can be better administered in the circuit court than in the probate court." § 12-11-41; Terry I, 957 So. 2d at 457-58. Thus, when a proper party files a sworn petition seeking removal under § 12-11-41, the circuit court should enter the order of removal as "a formality." Id. at 458. In other words, the probate court has no role in deciding whether removal is proper once a petition invoking § 12-11-41 has been filed in the circuit court. Id. See also Ex parte McLendon, 824 So. 2d 700, 704 (Ala. 2001) ("To allow the probate court to decide that issue as a threshold matter would eviscerate § 12-11-41. … [I]t would effectively deny the party seeking removal the right conferred by statute to have her status determined by the circuit court.").

The Terry I Court went on to explain that parties opposing removal under § 12-11-41 should present their arguments to the circuit court after removal, because the circuit court has the authority to remand an estate proceeding to the probate court if it determines that removal was improper. 957 So. 2d at 458. Accordingly, the Terry I Court concluded

15

that the probate court had erred by purporting to deny the father's removal petition and that the circuit court had erred by not expeditiously granting that same petition. Id. at 459. Despite those errors, however, this Court denied the father's mandamus petition because it was directed to the probate court when it was the failure of the circuit court to grant the removal petition that was "[t]he root of the problem." Id.

### b. The Terry II Court Affirms the Circuit Court's Order Remanding the Administration of the Mother's Estate to the Probate Court

After this Court's decision in Terry I, the circuit court reexamined its decision denying the father's removal petition. Terry II, 985 So. 2d at 402. Concluding that it had erred by denying that petition, the circuit court vacated its previous order and removed the administration of the mother's estate from the probate court. Id. The sons responded by asking the circuit court to remand the case to the probate court because, they said, the father's removal petition was untimely. Id. The circuit court agreed, concluding that the father "had properly petitioned the probate court to begin final settlement proceedings and that the probate court had taken jurisdiction in the case" before the father had filed his removal petition. Id. Accordingly, the circuit court remanded the administration

16

of the mother's estate to the probate court, after which the father filed the appeal that was the subject of Terry II. Id.[3]

This Court's analysis of the father's arguments in Terry II was straightforward. After noting the winding course the case had taken, the Court stated that two things were "clear" when the father filed his removal petition: (1) he had already "invoke[d] the probate court's jurisdiction over the final settlement of the estate by submitting his petitions, amendments, supplements, and accounts for a final settlement" and (2) "the probate court had accepted jurisdiction over the administration of the estate and had taken steps toward final settlement." Id. at 403-04. The Court thus concluded that, "[d]espite the wide latitude" § 12-11-41 generally affords an interested party to remove an estate proceeding, the father's removal petition was untimely. 985 So. 2d at 404. Accordingly, the Court affirmed the circuit court's order

---

[3]Following remand of the administration of the mother's estate to the probate court, the father filed both an appeal and a mandamus petition challenging the circuit court's remand order. Terry II, 985 So. 2d at 402. This Court denied his mandamus petition on procedural grounds, explaining that the circuit court's order remanding the estate proceeding back to the probate court was a final judgment that supported an appeal. Id. (citing Ex parte Kelly, 243 Ala. 184, 187, 8 So. 2d 855, 857 (1942)).

remanding the administration of the mother's estate to the probate court. Id. at 404 (further noting that "this Court has consistently held that once final settlement proceedings have been commenced by the probate court's assumption of jurisdiction, removal is cut off").

### B. Applying the Terry Cases Here

The sequence of events here mirrors what occurred in the Terry cases. Specifically, the estate administrator petitioned the probate court to begin final-settlement proceedings; the probate court scheduled a final-settlement hearing and sent notice of that hearing to interested parties; and only then did one of the parties invoke § 12-11-41 and petition the circuit court to remove the estate proceeding from the probate court. Applying the holdings of the Terry cases, the circuit court did not err by granting the Humane Society's petition for removal -- the court was obligated to grant that petition because it contained all that was required by § 12-11-41. But after McLeroy moved the circuit court to reconsider, the court should have recognized that final-settlement proceedings had begun in the probate court before the Humane Society sought removal. See McLendon I, 212 Ala. at 405, 102 So. at 698 ("Jurisdiction for final settlement in the probate court begins upon filing

18

accounts and vouchers with statement of the heirs invoking the court's jurisdiction for such settlement and an order entered setting day, directing notice, etc."). Consequently, the Humane Society's right to removal had been "cut off" before it invoked § 12-11-41, and the circuit court erred by not granting McLeroy's request to remand the estate proceeding to the probate court. Terry II, 985 So. 2d at 404.

### C. Whether Braswell's Estate is Ready for Final Settlement

In the face of our caselaw, the Humane Society nonetheless maintains that its removal petition was timely because, it says, "the condition of the estate" when McLeroy petitioned for final settlement precluded any such settlement from being entered. See § 43-2-501, Ala. Code 1975 ("Final settlement may be made at any time after six months from the grant of letters, if the debts are all paid and the condition of the estate in other respects will admit of it."). Specifically, the Humane Society argues that its pending petition to remove McLeroy as personal representative -- and its corresponding claims that McLeroy breached her fiduciary duties -- act as a bar to final settlement until those issues are resolved.

But even if the Humane Society is right that Braswell's estate was not ready to be settled when McLeroy filed her final-settlement petition, once the probate court acted on that petition, it had exclusive jurisdiction to make that determination. To be sure, the Humane Society can advance its arguments about why a final settlement of Braswell's estate should not be made to the probate court at the final-settlement hearing. As in the Terry cases, the probate court may decide that additional proceedings -- including hearings, discovery, and even a trial -- are necessary first.[4] See Terry II, 985 So. 2d at 403. But, as the Terry cases made clear, once the final-settlement process has begun in the probate

---

[4]If the probate court rejects the Humane Society's argument that Braswell's estate is not ready for final settlement and grants McLeroy's petition, the Humane Society may file an appeal to either the circuit court or this Court. See § 12-22-21, Ala. Code 1975 (providing "the party aggrieved" by the probate court's entry of final settlement with the right to appeal "to the circuit court or Supreme Court"). See Broughton v. Merchants Nat'l Bank of Mobile, 476 So. 2d 97, 103 (Ala. 1985) (explaining that "[r]emoval was not [the appellant's] only possible course of action" because even though he had "lost the right to removal [under § 12-11-41] when the probate court entered upon final settlement," he could still file an appeal to the circuit court after a final judgment was entered); McCormick v. Langford, 516 So. 2d 643, 646 (Ala. 1987) (agreeing with the appellant's contention "that the [probate] court erred in ordering a final settlement of an estate"). The Humane Society is simply wrong that these procedures fail to effectively protect its due-process rights or leave it without a remedy.

court, any additional proceedings that are required for final settlement must also be conducted in the probate court. Id. at 404. A party's right to remove an estate proceeding to the circuit court under § 12-11-41 is irrevocably "cut off" after that process begins. Id. The Humane Society's reliance on § 43-2-501 is therefore unfounded.

## Conclusion

For over 100 years, this Court has held that a circuit court cannot acquire jurisdiction over the administration of an estate after a probate court begins the final-settlement process for that estate. Thus, when the probate court began that process for Braswell's estate here, the Humane Society's right to remove the proceeding to the circuit court was cut off. Because the circuit court has no jurisdiction over the administration of Braswell's estate, McLeroy has a clear legal right to the mandamus relief she seeks. We therefore grant her petition and issue a writ directing the circuit court to (1) vacate its order consolidating the estate proceeding with the Humane Society's other action against McLeroy and her husband and (2) enter an order remanding the administration of Braswell's estate to the probate court.

PETITION GRANTED; WRIT ISSUED.

21

Parker, C.J., and Shaw, Bryan, Stewart, and Cook, JJ., concur.

Sellers, J., dissents, with opinion, which Mendheim, J., joins.

Wise, J., recuses herself.

SELLERS, Justice (dissenting).

Marion Kristen McLeroy, who is the personal representative of the estate of Nella Ruth Braswell, deceased, petitioned this Court for a writ of mandamus directing the Jefferson Circuit Court to vacate an order consolidating the administration of Braswell's estate with a separate civil action that is pending in the circuit court against McLeroy and her husband and to remand the administration of Braswell's estate to the Jefferson Probate Court. I respectfully dissent from this Court's decision to grant McLeroy's petition.

As noted in the main opinion, Braswell died in 2014 and McLeroy, who was designated in Braswell's will as the personal representative of Braswell's estate, offered Braswell's will for probate in the Jefferson Probate Court. The will was admitted, and McLeroy was appointed as the personal representative of Braswell's estate.

As also noted in the main opinion, the terms of Braswell's will called for the creation of what the main opinion refers to as "the Animal Trust" to provide for the care of animals Braswell owned when she died, and McLeroy and her husband are cotrustees of the Animal Trust. The Humane Society of the United States ("the Humane Society") is a

beneficiary of the Animal Trust and is to receive any trust funds that are not needed for the care of Braswell's animals. The Humane Society is also the residuary beneficiary under Braswell's will.

In April 2023, the Humane Society petitioned the probate court to remove McLeroy as the personal representative of Braswell's estate. The Humane Society asserted that McLeroy had improperly commingled assets, had failed to properly distribute assets, had failed to provide meaningful responses to the Humane Society's requests for an accounting and for other documentation, and had allowed estate assets to go to waste. The Humane Society also commenced a separate civil action against McLeroy and her husband in the Jefferson Circuit Court, seeking to remove them as trustees of the Animal Trust and to recover damages for their alleged breaches of duties under the Animal Trust ("the Animal Trust action"). The adversarial estate proceeding and the Animal Trust action are intertwined, as they involve virtually identical parties, they have overlapping claims, and the resolution of the claims in one action are likely to resolve claims in the other action.

According to the Humane Society, its petition to remove McLeroy as the personal representative of Braswell's estate triggered duties in the

24

probate court to set a hearing on that petition, to direct McLeroy to appear and answer the petition, and to hear the relevant evidence. See §§ 43-2-294 & 43-2-296, Ala. Code 1975.[5] However, a little less than a month after the Humane Society sought to remove McLeroy as personal representative of Braswell's estate, McLeroy filed a petition in the probate court seeking a final settlement of that estate. Subsequently, the Humane Society petitioned the Jefferson Circuit Court to remove the administration of Braswell's estate from the probate court to the circuit court. See § 12-11-41, Ala. Code 1975 (generally authorizing the removal of the administration of an estate from a probate court to a circuit court). Two days later, the circuit court entered an order removing the estate administration from the probate court and later consolidated the estate administration with the Animal Trust action. The circuit court later denied McLeroy's request to reconsider and to remand the estate administration to the probate court, and McLeroy filed the present petition for a writ of mandamus.

---

[5]The Humane Society also asserts that, pursuant to § 43-2-296, it was entitled to a jury trial on its claim that McLeroy had mismanaged Braswell's estate.

25

Section 12-11-41 provides that the administration of an estate may be removed from the probate court to the circuit court at any time before a final settlement of the estate:

> "The administration of any estate may be removed from the probate court to the circuit court <u>at any time before a final settlement thereof</u>, by any heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed of any such estate, without assigning any special equity …."

(Emphasis added.)

It is undisputed that a final settlement of Braswell's estate had not been completed by the time the Humane Society requested removal of the estate administration to circuit court. According to McLeroy, however, the circuit court's ability to remove was cut off once "the probate court had commenced proceedings <u>toward</u> final settlement." Petition at 6 (emphasis added). As McLeroy points out, notwithstanding the clear language in § 12-11-41 allowing removal of an estate administration from a probate court to a circuit court at any time before final settlement of the estate, this Court's precedent appears to further restrict the ability to remove. See, e.g., <u>Ex parte McLendon</u>, 212 Ala. 403, 405, 102 So. 696, 698 (1924) ("The words 'at any time before a final settlement,' found in the removal act, mean before proceedings for settlement begin, not before

26

they are completed. The better and approved practice is to aver in the removal petition that no steps have been taken for a settlement in the probate court."). The Humane Society, on the other hand, takes the position that proceedings for a final settlement simply could not formally begin until resolution of the Humane Society's claim that McLeroy had breached her duties as personal representative of the estate and therefore should be removed from that role. According to the Humane Society, until that matter was resolved, the probate court did not have the power to start proceedings toward a final settlement insofar as it would cut off the circuit court's ability to remove the administration of the estate. I agree with the Humane Society.

None of the precedents upon which McLeroy relies involved the removal of an estate administration after a personal representative had attempted to begin proceedings toward final settlement of a decedent's estate after a party had petitioned to remove that personal representative for alleged malfeasance. As the Humane Society points out, "[f]inal settlement [of a decedent's estate] may be made at any time after six months from the grant of letters, if the debts are all paid <u>and the condition of the estate in other respects will admit of it</u>." § 43-2-501,

27

Ala. Code 1975 (emphasis added). "When a bill seeks to compel a final settlement of a decedent's estate, it must show that the estate is ready for such a settlement." Baker v. Mitchell, 109 Ala. 490, 493, 20 So. 40, 43 (1896). Of note, in Baker, this Court concluded that a bill removing the administration of a decedent's estate from the probate court, which suggested that the interests of the administrator of the estate were in some respects antagonistic and hostile to the estate, could not be construed as a bill seeking to compel a final settlement of the estate because, instead of showing that the estate was ready for a settlement, the bill accusing the administrator of having interests hostile to the estate showed the opposite, i.e., that "the estate [was] not ready to be settled." Id. (emphasis added). In the present case, a petition to remove McLeroy as the personal representative of Braswell's estate for alleged malfeasance was pending when McLeroy petitioned for a final settlement. As noted, the Humane Society points to statutes indicating that its petition to remove McLeroy triggered certain procedural and substantive requirements, such as requiring McLeroy to appear and answer the Humane Society's allegations of malfeasance, the setting of a hearing on the Humane Society's petition, and the receipt and

28

consideration of evidence supporting (or opposing) the same. Braswell's estate was not ready to be settled at the time McLeroy attempted to start final-settlement proceedings.

I acknowledge this Court's opinion in Broughton v. Merchants National Bank of Mobile, 476 So. 2d 97 (Ala. 1985), although neither side in this dispute relies on Broughton. In that case, Merchants National Bank of Mobile ("Merchants"), which was serving as the executor of a decedent's estate in a probate court, filed a petition for final settlement of the estate. An heir of the decedent appeared at the hearing on the petition and filed a legal brief objecting to a final settlement and accusing Merchants of failing to fulfill its duties as the executor of the decedent's estate and as the trustee of a living trust that had existed for the benefit of the decedent during her life, the corpus of which was to be paid over to the decedent's estate upon her death. The probate court, however, rejected the heir's arguments and entered a final decree settling the estate and finding that Merchants had properly administered the estate.

Instead of appealing from the probate court's judgment, the heir filed a separate lawsuit against Merchants in the circuit court, accusing it of mismanaging the trust. In holding that the heir's lawsuit was barred

29

by principles of res judicata, this Court concluded that the probate court in the estate proceeding had had jurisdiction to render a final-settlement decree "even though issues of [Merchant's alleged] negligence and mismanagement were raised [by the heir]." 476 So. 2d at 101.

Although removal of an estate administration from the probate court to the circuit court was not an issue involved in <u>Broughton</u>, the Court in that case noted in what appears to be dicta that the heir "could have asserted his claims sounding in tort [against Merchants] by having the [estate administration] removed to the circuit court before the probate court had rendered its decree of final settlement." <u>Id.</u> at 103. But the Court also stated that "[r]emoval was not [the heir's] only possible course of action" in that, "[h]aving lost the right to removal when the probate court entered upon final settlement ..., [the heir] could have appealed to the circuit court ...." <u>Id.</u> (emphasis omitted). The Court, however, did not reveal exactly what it meant in referring to the probate court's having "entered upon final settlement." Thus, even if the referenced quoted portions of <u>Broughton</u> were not dicta, it is not clear which side of this dispute they would support.

In considering orders removing an estate administration from a probate court to a circuit court, this Court has stressed that a writ of mandamus will not issue unless the petitioner has demonstrated "a clear and indisputable right" to have the estate administration remanded to the probate court. Ex parte Clayton, 514 So. 2d 1013, 1015 (Ala. 1987). In the present case, in which the personal representative of a decedent's estate attempted to begin proceedings toward a final settlement of the estate shortly after the filing of a petition to remove the representative for alleged malfeasance, I am not convinced that it is clear and indisputable that the circuit court no longer had the authority to remove the administration of the estate from the probate court.

From my review of the materials before the Court, it appears that McLeroy engaged in legal gamesmanship by filing a petition for a final settlement in an attempt to defeat the Humane Society's substantive claims when it was obvious that Braswell's estate was not ready for final settlement. By allowing the Humane Society to remove the estate administration to the circuit court and then consolidating the estate administration with the Animal Trust action, the circuit court appropriately realized that the sum and substance of the matters were

the same and that consolidation would serve the interests of judicial economy. The main opinion fails to appreciate that, and by directing that the estate administration should be remanded to the probate court, it creates an existential risk of inconsistent results, because the probate court has no jurisdiction to hear the Animal Trust action. I would deny the petition for the writ of mandamus. Accordingly, I respectfully dissent.

Mendheim, J., concurs.